[No. 11773.  Department One.  August 15, 1914.]

F. D. BLACK *et al.*, *Plaintiffs*, v. HENDRICK SUYDAM *et al.*,

*Defendants.*

WILLIAM P. TRIMBLE *et al.*, *Appellants*, v. GEORGE E.

WRIGHT, *as Executor etc.*, *Respondents.*[1]

MORTGAGES — FORECLOSURE — SALE IN PARCELS—POWER OF COURT.
Rem. & Bal. Code, §§ 583 and 587, relating to sales of property on
execution, and providing that the sheriff shall offer the land for sale
as an entirety or in parcels as he shall deem the most advantageous,
and that when the property consists of several known lots or parcels
they shall be sold separately or otherwise as is likely to bring the
highest price, or when a portion is claimed by a third person and
he requires it sold separately, such portion shall be sold separately,
do not abrogate the equitable power of the court to order a sale in
parcels, and in the inverse order of alienation, on the foreclosure of
a mortgage covering the entire tract, part of which had been con-
veyed by the mortgagor to a third party, where the equities of the
parties will be subserved thereby, and without impairing the security
of the mortgagee.

APPEAL—REVIEW—ERROR INVITED BY APPELLANT.  In an action to
foreclose a mortgage, error of the court, if any, in refusing to try
out the question of priority of title as between defendants to a part
of the mortgaged property, claimed under a contract of purchase
executed prior to conveyance by the mortgagor of the entire prop-
erty to the other defendant, cannot be claimed where appellants ob-
jected to trying out the question of priority and demanded a decree
which would assume their own priority, thereby inviting the error
complained of.

APPEAL — REVIEW — ESTOPPEL TO ALLEGE ERROR — ADMISSIONS.
Where, in an action to foreclose a mortgage, the question of the
priority of title to part of the mortgaged property was in issue be-
tween defendants, the appellants are estopped to claim that admis-
sions of counsel relating thereto were inadvertently made by counsel
in the course of the trial and not intended to be binding, where the
court had asked for a statement of the position they intended to
occupy, and later recapitulated what he conceived to have been ad-
mitted, stating that his decree would be based thereon, and on ap-
pealing to counsel to state whether any dispute existed as to the
facts as recited, was told that they were correct.

[1]Reported in 142 Pac. 700.

MORTGAGES—FORECLOSURE—SALE IN PARCELS—PRIORITY OF ADVERSE
CLAIMS—ADMISSIONS. Where mortgagees disclaim any interest in the
manner of sale, it is proper, without trying the title, to direct a sale
of nine acres of the tract, claimed by one of the defendants under a
contract of purchase with the mortgagor prior to the mortgagor's
conveyance of the entire tract to the other defendant; since it was
the duty of the court to preserve the *status quo* of the parties until
the question of priority could be litigated, and no injury would result
from the sale.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered June 6, 1913, upon findings in
favor of the plaintiff, in an action for the foreclosure of a
mortgage, after decreeing a sale in parcels, upon the trial of
an issue between defendants.   Affirmed.

*France & Helsell* and *John W. Roberts*, for appellants.

*Wright, Kelleher & Caldwell* and *Lane Summers*, for re-
spondents.

ELLIS, J.—This is an action to foreclose a mortgage,
given by the defendant Suydam to Stevenson-Sanders Land
Company, covering forty acres of land, and by that company
assigned to the plaintiffs.   The plaintiffs asked a personal
judgment against the defendant Denny as guarantor.   The
mortgage was not contested by any of the defendants.
Trimble and wife answered, admitting the mortgage and its
priority, and claiming ownership of the entire forty-acre
tract.

Wright, as executor and trustee of the estate of W. Ham-
mond Wright, deceased, answered, claiming a contract
of purchase for a specifically described nine acres of the
forty, and alleging that his contract of purchase ante-
dated the mortgage.   He also alleged that he had com-
menced an action in the superior court of King county in
which the court had decreed that a conveyance be made to
him, as executor and trustee, of the nine-acre tract de-
scribed in his contract.   He prayed that it be provided in
any decree foreclosing the mortgage that the portion of the

mortgaged premises not covered by his contract be first sold
to satisfy the mortgage indebtedness, and that, after the
sale of such portion, if any balance of the mortgage indebted-
ness remain unpaid, then the portion of the mortgaged prem-
ises covered by his contract be last so sold to satisfy such
remaining indebtedness.

To this answer, the Trimbles replied, denying any prior-
ity on the part of Wright, reaffirming Trimble's purchase of
the entire forty acres, admitting the entry of a decree for
a conveyance of the nine acres to Wright, as pleaded in
Wright's answer, and alleging that an appeal had been
prosecuted from that decree to the supreme court, which ap-
peal they alleged was still pending.  The other defendants
appeared and denied the allegation of the complaint that
Denny was a guarantor, and disclaimed all interest in the
premises.

The trial was had on March 5, 1913.  The whole contest
was waged on the issue between Wright and the Trimbles as
to whether a sale should be made in separate tracts, as prayed
for in Wright's answer, or of the whole forty acres as an en-
tirety, as urged by the Trimbles.  The plaintiffs interposed
no objection to a sale in parcels, disclaiming any preference
in the matter.  The court, at the time of this hearing, was of
the opinion that the right of the defendant Wright, if he
had any, to a separate sale of the land claimed by him could
be preserved by a demand on the sheriff at the sale that the
nine acres claimed by him be sold separately and last.  It
appears that findings were prepared on this theory, but were
never signed by the court nor filed in the action.

On May 27, 1913, a second argument was had, upon the
application of the defendant Wright to open the proceedings
and take evidence as to his priority over the Trimbles touch-
ing the nine-acre tract, to the end that a decree might be
entered directing a sale of that tract separately and last.
The court, recalling certain admissions which had been made
by counsel for the defendants Trimble, at the first hearing,

changed his ruling and decided that the sale should be made
in accordance with the prayer of Wright's answer, namely,
in two parts; that not included in Wright's contract first,
and that included in Wright's contract only in case the
balance of the land failed to bring sufficient to satisfy the
mortgage indebtedness.  The court, both at the original
trial on March 5, and on the second argument of May 27,
refused to try out the question of title as between Wright
and Trimble, and based his final ruling of May 27 on the
admissions of counsel for Trimble, which we shall notice in
the discussion of the case.

On June 6, 1913, when findings in accordance with the oral
decision of the court of May 27 were presented, the defend-
ants Trimble again objected to a sale in parcels, and insisted
that the court could not so decree without fully trying out
the title as between Wright and Trimble.  Prior to that, at
both hearings, the defendants Trimble had insisted that the
court had no power in the foreclosure action to try the issue
between Wright and Trimble, and the court had adopted
their view.  The defendant Wright, throughout the proceed-
ings, insisted on a hearing on the question of priority.  After
a full argument, on June 6, 1913, the court finally refused
to make any formal findings of fact, but signed and entered
a decree ordering a sale in parcels according to his oral de-
cision of May 27.  The defendants Trimble appealed.

If we have caught the position of the appellants correctly,
it rests upon two principal contentions: (1) that the court
had no power to order a sale in separate parcels, as that is a
matter which is referred by the statute to the discretion of the
sheriff when making the sale; (2) that, in any event, the
court erred in ordering a sale in separate tracts, the Wright
tract last, without any evidence that Wright's interest, if he
had any, was prior to that of Trimble.

I.  The rule of equity in such cases, in the absence of con-
travening statutes, is tersely expressed as follows:

"Where it is necessary, in order to do equity as between several encumbrancers, or between successive purchasers of the mortgaged land or parts of it, that the different portions should be put up for sale in a certain order, as, in the inverse order of their alienation, the foreclosure decree should so command, with specific directions as to the order of sale, provided the existence of such equities is brought to the attention of the court by proper allegations in the pleadings, or facts shown at the hearing, or by the prayer of the party whose advantage will be promoted by a particular order of sale." 27 Cyc. 1652.

"But questions as to priority of claims upon different portions of the premises should be settled by the court before a sale is made, rather than after the sale, as the parties interested are then able to act intelligently as to the bidding at the sale, and the officer selling can directly afterwards go on with the distribution of the proceeds." 2 Jones, Mortgages (6th ed.), § 1611, p. 552.

As sustaining their contention that the equitable power of the court to order a sale in parcels where the mortgage covers the entire tract is abrogated by statute, the appellants cite Rem. & Bal. Code, § 587 (P. C. 81 § 909), which directs the manner of sale on execution by the sheriff as follows:

"He shall then offer the land for sale, the lots and parcels separately or together, as he shall deem most advantageous. All land, except town lots, shall be sold by the acre."

It is argued that, under this statute, it is, in all cases, the duty of the sheriff, and not of the court, to determine whether the sale shall be made in parcels or by the entirety. This court, in *Solicitors Loan & Trust Co. v. Washington & Idaho R. Co.*, 11 Wash. 684, 40 Pac. 344, has held that, where the rights of a purchaser of a part of mortgaged property are concerned, the above quoted statute is not controlling upon the court, and that, in such a case, it is the duty of the court, when it can be done without impairing the security of the mortgagee, to direct a sale of the land remaining to the mortgagor prior to the sale of the portion conveyed away by him. After discussing the above quoted section, and after

quoting from the code of procedure, § 501 (Rem. & Bal. Code, § 583; P. C. 81 § 927), as follows:

"When the sale is of real property consisting of several known lots or parcels, they shall be sold separately or otherwise as is likely to bring the highest price; or when a portion of such real property is claimed by a third person, and he requires it to be sold separately, such portion shall be sold separately,"

the court said:

"It will be seen by an examination of these several sections of the code that none of them contains anything inconsistent with the equitable rule contended for by appellant. They refer generally, so far as foreclosure proceedings are concerned, to sales where no part of the mortgaged property has been alienated. In fact, § 501 [Rem. & Bal. Code, § 583] seems to recognize the right of one claiming a portion of the property which is to be sold to have his part sold separately. We think the appellant was justly entitled to an order directing the sheriff to sell, according to law, all of the mortgaged premises remaining to the mortgagors, before offering for sale that portion conveyed to and owned by appellant."

The appellants contend that this court has held that Rem. & Bal. Code, § 583 (P. C. 81 § 927), above quoted, applies only to persons claiming adversely to the *mortgagor* and *mortgagee*. They quote, as sustaining that contention, the following language from *Bartlett Estate Co. v. Fairhaven Land Co.*, 56 Wash. 437, 105 Pac. 848, "We are of the opinion that the third persons here referred to are such persons as claim adversely to the mortgagor and mortgagee." In order to support their argument, they have cut a sentence of the opinion in that case in two, at a comma, and substituted a period for the court's punctuation. The whole sentence, as found in that opinion, reads as follows:

"We are of the opinion that the third persons here referred to are such persons as claim adversely to the mortgagor and mortgagee, *and such as acquire interests in the mortgaged property after the mortgage but before action is brought to foreclose.*"

It will thus be seen that the court adds, in clear phrase, which we have italicized, other third persons than those claiming adversely to the mortgagor and mortgagee, namely, those who have acquired a subsequent interest, but prior to the action to foreclose. This would include the respondent Wright in this instance. In the *Fairhaven Land Co.* case, the rule did not apply, because the claimants had purchased *pendente lite*, and after the notice of sale had been actually published.

The rule is established by overwhelming authority that, on foreclosure of a mortgage covering an entire tract, parts of which have been conveyed by the mortgagor to third persons subsequent to the mortgage but prior to the action to foreclose, the court will, when that fact appears, either in the pleadings, by the admissions of the parties, or by evidence, order a sale in parcels in the inverse order of alienation, when it appears that that course will best subserve the interests of all concerned.

"Upon a sale of mortgaged premises in an action for foreclosure, if the mortgagor, subsequent to the execution of the mortgage, has made successive transfers of separate parcels of the mortgaged premises to different persons, that portion, if any, still remaining in his hands, must first be sold to satisfy the mortgage debt and the costs and expenses of the action; and if a sufficient sum for that purpose is not realized from such sale, then the various portions of the mortgaged lands conveyed by the mortgagor must be sold in the inverse order of their alienation, according to the equitable rights of the different grantees as among themselves, until a sufficient sum is realized to satisfy the mortgage debt . . . This rule has been adopted throughout the states of the Union, and now prevails in New York, Alabama, Colorado, Florida, Illinois, Indiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, Ohio, Pennsylvania, South Carolina, Texas, Vermont, Virginia, and Wisconsin. The same rule also prevails in England, but a different rule obtains in Iowa, Kentucky and Georgia." 1 Wiltsie, Mortgage Foreclosure (3d ed.), § 584.

"The rule providing for the sale of parcels of mortgaged premises in the inverse order in which the conveyances thereof were made has been said to rest upon the principle that where the mortgagor sells a part of the mortgaged premises without reference to the incumbrance, it is right between him and the purchaser, that the part still held by the mortgagor should first be applied to the payment of the debt . . . The portion of the mortgaged premises retained by the mortgagor being regarded as equitably charged with the payment of the debt, if the mortgagor afterwards sells another parcel thereof, the second purchaser will take his parcel charged with the payment of the mortgage debt, as between him and the purchaser of the first lot; but as between such second purchaser and his vendor, the land still retained by the mortgagor will be primarily liable for the payment of the whole debt. The same principle will apply to every successive alienation throughout the entire order thereof." 1 Wiltsie, Mortgage Foreclosure (3d ed.), § 591.

See, also, 2 Jones, Mortgages (6th ed.), § 1621; 27 Cyc. 1368. We now declare in terms what was plainly implied in *Solicitors Loan & Trust Co. v. Washington & Idaho R. Co.*, *supra*. There is nothing in our statute preventing the application of the general equitable rule that it is the duty of the court to order a sale in parcels and in the inverse order of alienation when the equities of all parties will be subserved thereby, and when it can be done without impairing the security of the mortgagee. We have never held to the contrary. Here the mortgagee is not objecting to the application of that rule. Nor does it appear that a sale in parcels will realize a less price than a sale in the entirety.

II. If the court committed any error in refusing to try out the question of priority of title as to the nine-acre tract between Wright and the Trimbles, that error was invited by appellants. Wright, throughout, insisted upon offering evidence as to his priority of title over Trimble, and finally induced the court to permit him to put in evidence his contract with Suydam. While it would have been proper for the court to have taken evidence touching the question of prior-

ity between the parties to this appeal, we are of the opinion
that, in view of the admissions made by the appellants
Trimble at the original hearing of March 5, 1913, and again
on the second argument of May 27, it was unnecessary. At
the original hearing, the following colloquy took place be-
tween the court and counsel for the appellants Trimble:

"The Court: I never understood there was any dispute
about the ownership of the parcels of land. I did not know
there was any differences. I will hear from counsel. I had
supposed there was no dispute about the ownership of the
separate parcels.

"Mr. France: No, if your honor pleases. Mr. Suydam
had an optional contract with the Stevenson-Sanders Land
Company for forty acres of land and while he had that op-
tion, he agreed in another option to let Mr. Hammond
Wright, now represented as executor, have an option for ten
acres of that land. That option, according to our theory,
was never exercised and expired by limitation and was can·
celled and that is a question that has been twice to the su-
preme court and it is now set down in the supreme court for
hearing some time in May. Subsequent to the expiration of
the option to Mr. Wright, Mr. Suydam assigned his original
option of forty acres to Mr. Trimble, and, subsequent to
that time, gave a warranty deed to Mr. Trimble and Mr.
Trimble now holds the legal title to the whole forty acres,
subject to this optional right of Mr. Wright."

On the second argument of May 27, after a lengthy dis-
cussion, in which the respondent Wright was insisting upon
opening the case for the admission of testimony as to his
priority, the following took place:

"The Court: Let the stenographer take this down as a
part of the record to be transmitted to the supreme court in
the event of an appeal:

"The court will regard the case as reopened at this time
for the purpose of considering conceded facts that may not
have been in evidence before the court at the trial, and the
court will pass upon this question at this time in the light
of the evidence at the time of the trial and of the conceded
facts affecting the title to this property as now conceded in

open court. I will not open the case for the purpose of hearing the evidence regarding any disputed question of fact.

"It appears from the whole record, without any controversy, that one Suydam was the owner of the forty acres of land described in the complaint; that while the owner of the whole property he made a contract with one Wright for the sale of a specific nine acres, which contract was at once put on record; thereafter Suydam executed to the plaintiff in the case, as security for a loan, a mortgage covering the entire forty acres; thereafter Suydam executed to the defendant Trimble not [now] before the court in this action, and being for the first time before the court with reference to any claim he might have, or any interest in this property, a deed covering the whole of the forty acres which would purport to convey to Trimble title to the nine acres which Suydam had previously conveyed to Wright. After the execution of the deed from Suydam to Trimble, Wright brought an action against Suydam for the specific performance of the contract for the conveyance to Wright by Suydam of the nine acres in question. Judgment was rendered by the trial court in favor of the plaintiff and an appeal taken from that judgment to the supreme court, and the lower court was recently affirmed, so that at this time as between Suydam and Wright the latter has been adjudicated to be the owner of this tract of nine acres. Trimble not having been a party to the specific performance suit is not concluded by that decree and any ruling made by the court at this time upon the present issue would be without prejudice to the claim of Trimble or to the claim of Wright, leaving the controversy between them with regard to this tract of nine acres open to future litigation. I do not regard it as necessary for the court in this mortgage foreclosure to try a question of title between the conflicting claimants, and I do not undertake to do so. Such litigation is foreign to the purpose of the foreclosure suit.

"Now if it should transpire as the result of future litigation between Trimble and Wright that the latter as against Trimble is the owner of this tract of nine acres, certainly the sale of the whole forty acres in lump under the decree of foreclosure in this case would work to the disadvantage and loss of Wright. If the sheriff should refuse to sell his nine acres separately he would be unable to redeem his nine acres notwithstanding he has paid for it and depositing the money

into the registry of this court under the order of this court, unless he redeem the entire tract of forty acres from the sale. Such redemption might well be impossible in view of the money involved.

"Now, without passing at all upon the question of the right of Trimble against Wright and leaving that entirely open for future litigation, it seems to me that it would preserve the existing status and protect the ultimate rights, as may hereafter be determined by the court, that there should be a sale—a separate sale of this parcel. In the event that Wright should prevail in any litigation with Trimble he would then be able to redeem this nine acres by paying to the sheriff the price paid for that particular parcel. I do not see how the defendant Trimble could be prejudiced in any way by such a sale in parcel. At the time of the trial I was under the impression that the sheriff would naturally and presumably perform his duty by making a sale in parcel on the demand of Wright, and for that reason it seemed to me unnecessary to incorporate such a direction in the decree, but counsel tells me that the practice of the sheriff where the order is not specific is to sell the land in lump, and regardless of the practice. It would seem from the decision of the supreme court, reported in the 11th Washington in the suit of *Solicitors Loan & Trust Company v. Washington & Idaho Railroad Company,* that where there is an interest, an established interest, under a deed of property covered by a mortgage, that the grantee of the part has a right to a decree of the court requiring the sale of that part separately, so that the purchaser of it may redeem it separately. For the reasons as stated by the court, I will direct the separate sale of this property, the sale of thirty-one acres to be first, and the sale of nine acres second, without passing at all upon the rights between Trimble and Wright.

"Mr. France: In view of the decision of the court, it seems to me that new findings should be prepared in accordance with the present decision.

"The Court: I don't understand there was any dispute about the facts as recited by the court.

"Mr. France: I think the facts recited by the court are in accord with the court's statement that he would decide this

upon the undisputed facts, but those are not the facts that
are recited in the proposed findings.

"The Court: I don't see any occasion to worry the court
with these findings. Let what I have said go in the record
and go before the supreme court. They will understand my
ruling and I think a decree simply directing the order of sale
will be ample."

From the position thus outlined, the court never receded.
It is true that, on the argument of June 6, another of counsel
for appellants insisted that nothing was or had been admitted,
but the above speaks for itself. It is urged that these ad-
missions were inadvertent admissions made by counsel in the
course of the trial, and not intended to bind the appellants
Trimble in any way; but, in view of the fact that in both in-
stances the court had directly appealed to counsel for a state-
ment as to the position they intended to occupy, it can
hardly be said that these admissions were inadvertent. This
is especially true with reference to the second colloquy above
quoted, in which the court recapitulates what he conceived
to have been admitted, stating at the time that he intended
to make those admissions the basis of his decree, and appeal-
ing to counsel to say whether there was any dispute as to
the facts so recited. The admission of counsel that the facts
so recited were correct certainly estops the appellants now to
claim that the admissions were never made, or made inadvert-
ently. Moreover, at that time, the decision of this court
*en banc*, handed down on April 4, 1913, in the case of *Wright
v. Suydam*, 72 Wash. 587, 131 Pac. 239, holding that the
Wright contract was not a mere option and had never been
forfeited, and enforcing specific performance against Suy-
dam, was called to the trial court's attention. This negatived
the only claim made by the appellants Trimble at the trial
that Wright's contract, though prior in time to that of
Trimble, was a mere option which had expired as between
Suydam and Wright before Trimble purchased the forty
acres. While that decision was not binding upon Trimble,

who was not a party to that action, it emphasizes the necessity that the trial court was under to preserve the *status quo*, by ordering a sale in parcels in inverse order of alienation, until the matter of actual priority could be litigated between Wright and Trimble, should either of them thereafter elect to bring an action against the other for that purpose.

But it is asserted that, if the land, less the nine acres claimed by Wright, be first sold and should sell for sufficient to pay the entire mortgage debt, then the Wright estate would have the land which it claims free from the mortgage. The answer is that, if Trimble owns the entire tract, he will not be injured, since, if he elect to redeem, it will cost him no more to redeem than if the whole tract had been sold for the same amount. By that redemption, he will have the whole tract clear of the mortgage just as if it had all been sold and all redeemed. If, in fact, he does not own the nine acres claimed by Wright, which, by his own admission, he purchased subject to Wright's contract as well as subject to the mortgage, he is not injured, but will get exactly what he purchased. On the other hand, if the sale be made of the forty acres in entirety, Wright, if he has an equitable title to the nine acres, would be seriously prejudiced by the sale, since he could only protect his interest in the nine acres by redeeming the whole forty acres and Trimble would then get the other thirty-one acres free from the mortgage subject to which he purchased as well as subject to Wright's contract. While the appellants are earnestly insisting that the court, by ordering a sale of the two tracts separately, the nine acres claimed by Wright to be sold last, thereby assumed Wright's priority without proof, the real fact is that, by this decree, the court merely assumed that, if Wright had any title at all as against the Trimbles, that title was the prior title. This assumption was clearly sustained by the admissions made at the trial. In any event, if Wright, in future litigation, fail to establish title as against Trimble, the sale as ordered can work no injury to the appellants Trimble. Had the court ordered a

sale of the entire forty acres in one tract, it would, in effect, have assumed, without evidence and against their own admissions, the priority of the claim of the appellant Trimble over that of Wright, which would have been, as we have seen, extremely prejudicial to Wright.

It cannot be doubted that, if Suydam had never contracted to convey to Trimble, and had never conveyed to Trimble, and the same facts relative to Wright's claim were admitted by Suydam as now admitted by Trimble, Wright would be entitled to have the nine acres which he claims sold last, and the balance of the land first subjected to sale to pay the mortgage. In fact, the appellants so concede. But if Wright has any interest as against Trimble, it is because Trimble took title subsequent to Wright's contract and with notice of it. In other words, it is because Trimble stands in Suydam's shoes. Hence, if Wright has any valid claim, it is as valid against Trimble as it would have been against Suydam, and he has the same right to a sale in parcels in the inverse order of alienation against Trimble that he would have had against Suydam.

It is true, as conceded by both sides, that the actual right of ownership of the nine acres as between Trimble and Wright must be litigated in some future action. The court declined to go into a complete trial of this title in this action. The conflict of claims being presented by the pleading, however, and the admissions showing that, if Wright had any valid claim it was superior to Trimble's, it was incumbent upon the court at least to preserve the *status quo* as between these parties, and not by his decree prejudice future litigation of this question of title. This could only be done by ordering sale of the two parts separately and of the Wright tract last. Any other course would have been to adjudge Trimble's claim the prior right, and, in effect, that Wright had no valid claim.

We think the court was justified in entering the decree as made, for the following reasons: *first*, because the mort-

gagee is not objecting to a sale in parcels as decreed; *second*, because the appellants Trimble objected to trying out the question of priority after admitting that if Wright had any interest, it was a prior interest, but demanded a decree which would assume the appellants' own priority over Wright; *third*, because Wright alleged priority and offered to prove it, but was prevented from so doing by the appellants' objections; if this was error, the appellant invited it; *fourth*, because the sale in parcels cannot seriously injure the appellants, while a sale *en masse* would seriously injure the respondent Wright; *fifth*, because it is manifest that the method of sale which would realize the highest price is that which preserves the right of redemption to both claimants, Wright and Trimble.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.