[No. 6200–3–II. Division Two. December 26, 1984.]

ROBERT HAUETER, ET AL, *Respondents,* v. ROBERT H. RANCICH, ET AL, *Appellants.*

*Robert Keolker,* for appellants.

*Larry C. Leonardson,* for respondents.

REED, J.—Robert H. Rancich and his wife purchased a vendor's interest in a real estate contract covering seven residential lots. Because the contract was in default, Rancich brought a judicial forfeiture action, but neglected to join Robert Haueter and his wife, subsequent purchasers of two of the seven lots. The Haueters responded with the present action to quiet title to their two parcels. The trial court quieted title in the Haueters' name, provided they pay Rancich a sum equal to the original contract's deed release price for the two lots plus some contract interest, back taxes, attorney's fees and costs. Rancich appeals. We affirm.

To explain how this litigation arose, we must begin with the underlying real estate contract entered into by South Peninsula Development Co. (Peninsula), as vendor, and Frank Enterprises, Inc., as vendee. The contract covered 13 residential lots located at Trails End Lake in Mason County. A deed release provision gave the vendee the right to obtain clear title to one lot for each $2,500 paid. Frank Enterprises assigned its vendee's interest to New England Capital Corp. (NECC).

The Haueters purchased four lots from NECC without adequately checking the title. Unfortunately, two of their lots had not been released from the real estate contract on

which NECC was in default. Rancich entered the picture when he foreclosed a mortgage on one of the lots held by NECC. He then paid back taxes due on *all* lots still subject to the real estate contract to prevent a forced tax sale. Also, to avoid forfeiture by Peninsula, Rancich purchased the vendor's interest in the remaining seven lots, including the two lots held by the Haueters, for the current balance owing on the contract, $14,393.29.

Rancich next brought an action to forfeit the vendee's interest in the real estate contract. Because of a misunderstanding of the law, he named only NECC as defendant. Haueter was given no notice of and was not joined in the forfeiture action although Rancich had actual knowledge of his interest. The court decreed a forfeiture.

At this juncture, Haueter brought the present action to quiet title against Rancich. The trial court determined that Haueter's interest in his two lots was unaffected by Rancich's foreclosure action because Haueter had not been given notice. The trial court then, in effect, partitioned the seven lots covered by the forfeited real estate contract. Haueter could obtain clear title to his two lots by paying $5,000 to Rancich, which was the deed release price for two lots, plus some contract interest, the back taxes Rancich had paid on Haueter's lots, attorney's fees and costs.

The only issue raised by Rancich on appeal is the propriety of the equitable remedy fashioned by the court. Rancich reasons that Haueter could have obtained no greater rights than his grantor. Haueter's grantor, NECC, being in default on the real estate contract, had no right to exercise the deed release clause and pay only $5,000 for two lots. Thus, Rancich concludes, neither did Haueter. We have no quarrel up to this point, but Rancich takes his argument one step further. He urges that Haueter must pay the full balance owing on the forfeited real estate contract, $14,393.29, to obtain title to his *two* lots. If we were to accept this argument, Rancich, standing in the shoes of the original vendor, not only would be reimbursed his $14,393.29, but would end up owning five lots free and clear. Consequently,

we cannot agree with his contention.

■ One must be mindful that both quiet title and contract forfeiture proceedings are brought in equity. *Dill v. Zielke,* 26 Wn.2d 246, 173 P.2d 977 (1946); *Bennett v. Thorne,* 36 Wash. 253, 78 P. 936 (1904). When equity jurisdiction attaches, it extends to the whole controversy and whatever relief the facts warrant will be granted. *Hubbell v. Ward,* 40 Wn.2d 779, 246 P.2d 468 (1952). Ordinarily, this means that a successor in interest to a vendee in default has the right to perform the contract to protect his interest. *See Kendrick v. Davis,* 75 Wn.2d 456, 452 P.2d 222 (1969); *Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959); *Chambers v. Cranston,* 16 Wn. App. 543, 558 P.2d 271 (1976). This rule adapts well to situations where the vendee and his successor have a coextensive interest in the land. Where, however, the vendee's interest has been subdivided equity may require the court to fashion a more suitable remedy.

■ This is precisely what the trial court did and we find no abuse of discretion. In fact, the amount the Haueters are required to pay might be characterized as generous. This is so because the facts presented on appeal warrant application of the marshaling of assets rule that parcels should be foreclosed in the inverse order of alienation. This venerable rule of equity has been adopted by the overwhelming weight of authority. *Bode v. Tannehill,* 119 Wash. 98, 204 P. 802 (1922); *Seasons, Inc. v. Atwell,* 86 N.M. 751, 527 P.2d 792 (1974); *Portland Trust & Sav. Bank v. Lincoln Realty Co.,* 180 Or. 96, 170 P.2d 568 (1946); G. Osborne, *Mortgages* § 287 (2d ed. 1971); 53 Am. Jur. 2d *Marshaling Assets* § 44 (1970). In *Black v. Suydam,* 81 Wash. 279, 285, 142 P. 700 (1914), our Supreme Court cited the following passage from 1 C. Wiltsie, *Foreclosing Mortgages* § 584 (3d ed. 1913), as our State's expression of the rule:

"Upon a sale of mortgaged premises in an action for foreclosure, if the mortgagor, subsequent to the execution of the mortgage, has made successive transfers of separate parcels of the mortgaged premises to different per-

sons, that portion, if any, still remaining in his hands, must first be sold to satisfy the mortgage debt and the costs and expenses of the action; and if a sufficient sum for that purpose is not realized from such sale, then the various portions of the mortgaged lands conveyed by the mortgagor must be sold in the inverse order of their alienation, according to the equitable rights of the different grantees as among themselves, until a sufficient sum is realized to satisfy the mortgage debt . . .

The doctrine applies in like manner to cases involving land subject to a paramount vendor's lien securing payment of unpaid purchase money. 53 Am. Jur. 2d *Marshaling Assets* § 57 (1970); Annot., *Sales in Inverse Order of Alienation,* 131 A.L.R. 4, 40 (1941). We see no reason for not applying it when the paramount interest is an executory contract seller's interest. Here, the parties have stipulated that all seven lots covered by the real estate contract were, in October 1978, of equal value of between $8,000 and $9,000.[1] Thus, the four lots retained by NECC—the original vendee and the common source of title for Rancich and Haueter—having a value of $32,000 to $36,000, more than satisfied the balance due on the underlying contract, $14,393.29, without resort to Haueter's two parcels. Rancich then, who has sold these four lots, will not be heard to complain that he was prejudiced by the trial court's ruling. In our opinion he is fortunate Haueter did not appeal because Rancich has enjoyed a substantial windfall at plaintiff's expense.

Judgment affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

---

[1]This was done at our behest, pursuant to RAP 9.11 because, without evidence of the values of the respective lots, neither this court nor the trial court had a sufficient basis for doing equity. We also have considered applying a theory of contribution, but have not done so because Rancich, relying on his title acquired in the default foreclosure, has conveyed away the other lots.