[No. 1135. En Banc. April 26, 1990.]

*In the Matter of the Disciplinary Proceeding Against* JOHN S. LYNCH III, *an Attorney at Law.*

*John S. Lynch III,* pro se.

*Leland G. Ripley, Chief Disciplinary Counsel,* for Bar Association.

SMITH, J.—John S. Lynch III, an attorney admitted to practice in this state, appeals a decision of the Disciplinary Board of the Washington State Bar Association suspending him for 6 months. He claims that procedures at the Board's hearing violated his due process rights. We conclude that

the suspension for 6 months was an insufficient sanction for the conduct involved. We determine, on the basis of the limited record before us, that Appellant Lynch should be suspended from the practice of law for a period of 2 years.

Appellant Lynch was admitted to the Washington State Bar on October 27, 1975. At all times relevant to this proceeding, he was a Deputy Prosecuting Attorney for Thurston County.

This matter initially came before this court on March 14, 1988, for approval of a stipulated sanction of suspension for 30 days. By order signed by the Chief Justice on May 5, 1988, this court disapproved the recommended discipline, concluding "that the suspension under the conditions stated in the stipulation is not an adequate sanction."

On September 20, 1988, prior to the hearing to determine a more appropriate sanction, Appellant Lynch and bar counsel entered into a stipulation of facts and violation. Our review is substantially limited to the stipulation and the sparse record on this appeal. No formal complaint was filed by bar counsel.[1] Our review of the charge is thus similarly limited to the stipulated violation.

The stipulation of facts and violation reads as follows:

STIPULATED FACTS

1. Respondent lawyer, John S. Lynch, III was admitted to the practice of law in the State of Washington on October 27, 1975. At all times material to this Stipulation, he practiced law in Olympia, Thurston County Washington.

2. In June 1985, respondent Lynch was employed as a deputy prosecuting attorney for Thurston County. On June 12, 1985, he observed a fellow deputy Chris Pomeroy have, as part of her birthday celebration, her picture taken with undercover narcotics officers.

3. Respondent had a friend with a serious cocaine problem who had expressed belief that he would never be arrested for illegal drug use because he would always be able to spot an undercover narcotics officer.

---

[1] Although Rule for Lawyer Discipline 4.3 provides that prior to a discipline hearing, State Bar Counsel shall prepare, file and serve a formal complaint, the parties nevertheless were entitled to bypass this procedure by entering into a stipulation of violation under Rule for Lawyer Discipline 4.14.

4. Respondent wanted to convince his friend of the dangerousness of using illegal drugs by showing him that undercover police officers were not readily identifiable. He therefore, took a photocopy of one of those pictures and took it home with him.

5. Respondent never showed the picture to his friend. Instead, he placed the photocopy, face down, on his mantel in his home, intending to show it to his friend, and forgot about it.

6. During the summer of 1985, respondent had two parties at his house and during that time, some person removed the photocopy from respondent's house. Eventually, the photocopy ended upon [sic] in the hands of Brian Mackey, a drug dealer.

7. On August 8, 1985, a search warrant was served on Brian Mackey's residence and along with drugs and cash, the photocopy was discovered. Mackey was arrested.

8. On January 23, 1986, Mackey, as part of a plea bargain indicated to police that respondent Lynch had given him the photocopy.

9. That same day, respondent was confronted by Mackey's statements and asked to resign. He denied Mackey's version of events and submitted his resignation.

10. The Thurston County Prosecuting Attorney asked the State Attorney General to investigate the respondent's conduct. Following an investigation, the Attorney General's office decided not to file criminal charges and instead filed a complaint with the Association in January 1987.

11. Brian Mackey, a drug user as well as a drug dealer, has disappeared.

12. The available evidence indicates that the photocopy ended up in Mackey's hands through respondent's negligent loss of the photocopy of the photograph.

13. The available evidence does not demonstrate that respondent's actions were venal but rather his conduct appears to involve the negligent release of confidential information.

## STIPULATED VIOLATION

14. Respondent, his attorney, Rita Bender and state bar counsel agree that respondent's conduct as outlined above violated RLD 1.1(c) prohibiting a violation of his oath of duties as an attorney; and RLD 1.1(i) prohibiting a violation of the Code of Professional Responsibility, 80 Wn.2d 1119, rescinded effective September 1, 1985, because he violated DR1–102(A)(5) prohibiting engaging in conduct that is prejudicial to the administration of justice.[2]

---

[2]The Code of Professional Responsibility was in effect until September 1, 1985, when it was superseded by the Rules of Professional Conduct. 104 Wn.2d 1102 (1985).

15. This Stipulation is entered into in order to facilitate a disciplinary hearing to resolve the issue of the sanction to be imposed for respondent's conduct outlined in paragraphs 1–14 above. Once it has been signed by respondent, his counsel and state bar counsel, it shall be a public document and part of the hearing record in this proceeding.

16. Both respondent and state bar counsel may present evidence regarding the appropriate disciplinary sanction at a hearing to be held September 20, 1988. This Stipulation and all other relevant evidence will be considered by the hearing panel officer in making his decision regarding the appropriate disciplinary sanction.

The hearing was held on September 20, 1988, before James R. Lowry, hearing officer.[3] Following that hearing, bar counsel made a motion to amend and correct the hearing officer's decision, stay the proceedings and authorize the deposition of Brian Mackey. It was earlier stipulated that Mr. Mackey was not available, but later determined that he was available. The hearing officer denied the motion and on November 14, 1988, entered findings of fact and conclusions of law, recommending only a reprimand.

Bar Counsel appealed to the Disciplinary Board and made another motion to stay the proceedings and authorize the deposition of Brian Mackey.[4] The chairperson of the Disciplinary Board denied the motion. Bar counsel then

---

The Code prohibited a lawyer from "[e]ngag[ing] in conduct that is prejudicial to the administration of justice" under CPR DR 1–102(A)(5). Former Rule for Lawyer Discipline 1.1(i) stated:

A lawyer may be subjected to the disciplinary sanctions or actions set forth in these rules for any of the following:

. . . .

(i) Violation of the Code of Professional Responsibility of the profession adopted by the Supreme Court of the State of Washington.

This rule was amended merely by changing "Code of Professional Responsibility" to read "Rules of Professional Conduct" when the new rules were adopted September 1, 1985. The Disciplinary Rules were not preserved.

Rule for Lawyer Discipline 1.1(c) continues to state that a lawyer may be subject to disciplinary sanctions for "[v]iolation of his or her oath or duties as a lawyer".

[3] RLD 2.5.

[4] RLD 2.3.

filed an amended notice of appeal to raise an additional issue.

The case was heard before the Disciplinary Board on January 13, 1989. A majority of the Board amended the findings of fact of the hearing officer by (1) adding two findings of fact based upon statements made by Mr. Lynch's attorney at the hearing, (2) deleting one finding and a portion of another, and (3) recommending a sanction of suspension for 6 months instead of a reprimand. Four members of the Board dissented and recommended that the matter be reopened to allow the testimony of Brian Mackey, and, in any event, recommended a sanction of suspension for 2 years or disbarment. The chairperson of the Board, Brian A. Putra, abstained from voting.

Appellant Lynch filed a notice of appeal to this court pursuant to Rule for Lawyer Discipline 7.2.

This court requested from the Bar Association a copy of the original complaint against Appellant Lynch. He filed a motion in opposition. The Clerk of this court denied his motion. However, bar counsel acknowledged during argument that no formal complaint was ever filed. The case necessarily proceeded solely upon the stipulated violation.

Appellant Lynch acted as his own attorney before the court in this proceeding. In the course of his argument and in response to questions from the court, he made certain statements which are binding against him as judicial admissions.[5]

The questions presented by this case are:

1. Whether the Disciplinary Board of the Washington State Bar Association has authority to amend a hearing officer's findings of fact by adding and deleting findings;

2. Whether a question directed to appellant's counsel by the chairperson of the Disciplinary Board concerning a

---

[5]*See Black v. Suydam,* 81 Wash. 279, 142 P. 700 (1914); *United States v. Wilmer,* 799 F.2d 495, 502 (9th Cir. 1986), *cert. denied,* 481 U.S. 1004 (1987). *See also* RCW 2.44.010 (authority of attorney); 4 J. Wigmore, *Evidence* § 1063 (rev. 1972); 9 J. Wigmore, *Evidence* § 2588 (rev. 1981); 5B K. Tegland, Wash. Prac., *Evidence* § 352, at 110 (3d ed. 1989).

prior stipulation rejected by this court constituted bias depriving the attorney of due process; and

3. Whether the appropriate sanction for the stipulated violations in this case is reprimand, suspension for 6 months, suspension for 2 years or disbarment.[6]

Appellant Lynch claims that the Board's amendments to the hearing officer's findings of fact violated his right to procedural due process. He claims that he was denied notice because the added findings of fact were outside the issues raised by the bar for review at the Board's hearing. The added findings are:

21. Mr. Lynch, while a deputy prosecuting attorney, made at least one bet with Mr. Macke [sic] which he asserts was regarding a football game.

22. Mr. Lynch, upon the request of Mr. Mackey and after Mr. Mackey's arrest, but before his trial, gave Mr. Mackey $1,000 for the purpose of assisting in Mr. Mackey's defense of the charges then pending against him. The delivery of these funds was prior to the time that it was learned by the authorities that the photocopy made by Mr. Lynch was the photocopy found in Mr. Mackey's possession at the time of his arrest.

Appellant Lynch relies on *In re Ruffalo,* 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968), for his contention that the Board's consideration of these additional issues deprived him of due process. His reliance is misplaced. In *Ruffalo,* additional violations of the ethical rules were added to the charges after evidence was heard in a disciplinary proceeding. The Supreme Court stated that an attorney in a disciplinary hearing is entitled to be advised of charges before proceedings commence. *In re Ruffalo,* 390

---

[6]Sanctions in lawyer discipline cases are provided in Rule for Lawyer Discipline 5.1, which reads:

"Upon a finding that a lawyer has committed an act of misconduct, one or more of the following sanctions, or an admonition pursuant to rule 5.5A, may be imposed:

"(a) Disbarment;

"(b) Suspension from the practice of law for an appropriate fixed period of time not exceeding 2 years;

"(c) Reprimand;

"(d) Censure;

"(e) Cumulative disciplinary suspension pursuant to rule 5.4."

U.S. at 551. In this case, no additional charges were added, although two findings of fact were added.

Rule for Lawyer Discipline 6.1(b) provides that a notice of appeal shall specify the issues intended to be raised before the Disciplinary Board. The bar's notice of appeal and amended notice of appeal to the Board raised the following issues:

1. Whether the hearing officer was correct in denying bar counsel's motion to stay the proceedings and authorize the deposition of Brian Mackey.

2. Whether the hearing officer's Finding No. 11 that Brian Mackey may have been unavailable for some period of time after his release from jail is supported by the evidence.

3. Whether the hearing officer's finding assigning partial responsibility for the disclosure of the officer's identities to the failure of the undercover police officers to observe their own rules against having the pictures taken supports the hearing officer's recommendation of a reprimand rather than a suspension.

4. Whether the hearing officer's recommendation of a reprimand is sufficient in light of the evidence of misconduct.

5. Whether the hearing officer was correct in concluding that respondent's conduct did not violate DR–4–101(B).

 Appellant Lynch claims findings of fact 21 and 22 were outside the issues raised on appeal. However, the facts are within the scope of issue 1 (whether the hearing officer was correct in denying motion to stay proceedings and authorize the deposition of Mackey) and issue 4 (whether the hearing officer's recommendation of a reprimand is sufficient in light of the evidence of misconduct).

Appellant admits that these facts were contained in the complaint filed with the Bar Association by Assistant Attorney General Gregory P. Canova. However, he contends they could not be discussed by the Board because they were not contained in the hearing officer's findings of fact. To the contrary, those facts were stated by Mr. Lynch's own counsel, Ms. Rita L. Bender, in response to questions from the Board.[7]

---

[7]The following exchange occurred between chairperson Brian A. Putra and Ms. Rita L. Bender during the course of the hearing before the Disciplinary Board:

Rule for Lawyer Discipline 6.5(b) states that "evidence not presented to the hearing officer or panel shall not be presented to the Board by any party without the consent of the opposing party." In this case, Mr. Lynch was present and did not object to the statements made by his attorney when she answered the questions asked her during the proceeding before the Board.

In the course of his argument before this court, Appellant Lynch stated that Brian Mackey threatened to report that Lynch had given him the photocopy of the photograph of the officers and the deputy prosecuting attorney unless Lynch gave him $1,000. According to Mr. Lynch, Mr. Mackey stated that he could "get off the rap" by making this assertion against Lynch, which Lynch characterized as "false."

In response to questions asked him during his argument before this court, Appellant Lynch, in explaining his financial transaction with Mr. Mackey, stated that he gave the $1,000 to Mackey because he (Lynch) had had a surgical proceeding that day, was still under the effect of anesthesia, and was frightened. Appellant Lynch further stated that he gave Mr. Mackey $1,000 so that Mackey would not "falsely accuse" him. He also acknowledged that he gave Mr. Mackey the money so that Mackey would not give the

---

"CHAIRMAN PUTRA: At the time of those parties, did your client know that Mr. Mackey had a reputation in the community as a drug dealer?

"MS. BENDER: Yes. My client has known that for quite some long time. Possibly dating back to when Mr. Mackey was at the University of Washington.

"CHAIRMAN PUTRA: What, if any, financial transactions has your client had with Mr. Mackey either before or after copying of the photograph?

"MS. BENDER: I am not aware of any financial transactions except the possibility at some point in the past they had made a bet on a football game."

After the events in question and after the accusations which Mackey started to make, Mackey contacted John and indicated that he was going to tell the police that he had gotten the photocopy from John unless John helped pay for his defense.

"CHAIRMAN PUTRA: Did he give him any money?

"MS. BENDER: He gave him some money.

"MR. PUTRA: How much?

"MS. BENDER: My recollection is it was $1,000, that is correct."

authorities his (Lynch's) name. He stated that he did not believe he was buying silence, but believed he was being extorted by Mackey.[8]

By filing this appeal, Appellant Lynch placed the entire case before the court. This court has exclusive responsibility for administration of lawyer discipline and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline. RLD 2.1, 7.1(b). Although this court normally attaches greater weight to conclusions of the Disciplinary Board than to conclusions of a hearing officer, it may still review the conclusions of the Board. *In re McGlothlen,* 99 Wn.2d 515, 663 P.2d 1330 (1983). *See In re Kerr,* 86 Wn.2d 655, 548 P.2d 297 (1976).

Appellant Lynch further claims that the findings deleted by the Board as irrelevant were supported by testimony, were not specified by bar counsel as issues to be raised at the hearing, and thus should not have been deleted. He relies on *In re Felice,* 112 Wn.2d 520, 525, 772 P.2d 505 (1989) for this proposition. The deleted findings read:

> 13. The undercover narcotic officers violated the regulations of the Prosecutor's Office by having their pictures taken in their working street clothes. If they had not so violated their regulations, the photograph would not have been available.
> 17. [Second sentence] The narcotics officers showed poor judgment in permitting their pictures to be taken and in otherwise not safeguarding their identity.

In *Felice,* this court stated that it would not disturb a hearing officer's findings of fact made upon conflicting evidence. *In re Felice,* 112 Wn.2d 520, 525, 772 P.2d 505 (1989). The evidence in this case is not in conflict. Appellant Lynch could cite no such conflict when given an opportunity during his argument before this court.

Appellant Lynch challenged the authority of the Board to reverse findings of fact. Rule for Lawyer Discipline 6.7(d)

---

[8]Rule of Professional Conduct 3.3 requires candor before a tribunal and provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

specifically grants the Board authority to adopt, modify or reverse findings, conclusions, or recommendations of the hearing officer. Deleting a finding as irrelevant is permissible under that rule.

Appellant Lynch claims he was denied his due process right to an unbiased decisionmaker because the chairperson of the Board asked appellant's attorney a question concerning a stipulation previously rejected by this court. The question was directed to the attorney as she was discussing an appropriate sanction for Lynch's misconduct.

CHAIRMAN PUTRA: You entered originally into a stipulation with Bar counsel for a 30–day suspension.

MS. BENDER: Yes.

CHAIRMAN PUTRA: That went to the Supreme Court and it was rejected as inadequate discipline. How do you handle the fact that if we gave a reprimand now, it would seem on its face to be a useless act that would be unacceptable to the Supreme Court?

MS. BENDER: For one thing, I can't speak for the Supreme Court. I can say that I believe that the Disciplinary Board is charged with making its own determinations and that just as you felt the 30–day sanction was the appropriate sanction at that time, you now have a Hearing Officer's determination after he heard testimony and you have a much fuller record now than you did at the time that sanction was entered, and I would hope that the Supreme Court, if this case goes to the Supreme Court now, would look at the record which now exists and look at why the Hearing Officer made the recommendation he did and would look at why you make the recommendation you do, and I have to believe or this is a very futile process, that everybody comes to this with an open mind and that the Disciplinary Board would exercise its judgment based upon what it believes is appropriate, rather than try and second guess the Court. And I have to believe that if this goes to the Court, the Court will look at the record which now exists and will look at your findings and your conclusions and will give you the respect which you deserve. And I hope that answers your question. I don't know how else to answer it I can't second guess the court.

■ Appellant Lynch's argument has no merit. The Disciplinary Board's recommendations are only advisory. The ultimate responsibility for determining discipline rests with this court. RLD 2.1; *see, e.g., In re Felice,* 112 Wn.2d 520,

772 P.2d 505 (1989); *In re Noble,* 100 Wn.2d 88, 667 P.2d 608 (1983); *In re Espedal,* 82 Wn.2d 834, 514 P.2d 518 (1973). The question by Mr. Putra was a logical one.

The Disciplinary Board recommended suspension for 6 months. Four dissenting members of the Board recommended suspension for 2 years or disbarment. This court will ordinarily adopt the recommendation of the Board unless the court can articulate specific reasons for adopting a different sanction. *In re Selden,* 107 Wn.2d 246, 728 P.2d 1036 (1986). In reaching its conclusion, this court considers whether the Board's recommended sanction:

> (1) is clearly insufficient to protect the public from future misconduct and to deter other attorneys from such misconduct; (2) is disproportionate to the misconduct as measured by sanctions imposed in similar cases; (3) affects the attorney too harshly or too leniently in light of the nature of the misconduct; (4) is not supported by the record; and (5) was recommended by a unanimous rather than a divided Disciplinary Board.

*In re Witteman,* 108 Wn.2d 281, 289–90, 737 P.2d 1268, 68 A.L.R.4th 677 (1987). *See In re Noble,* 100 Wn.2d 88, 667 P.2d 608 (1983).

Because the Board was divided on its recommendation for the sanction, this court can more readily consider sanctions other than those recommended by the majority. *See In re Witteman,* 108 Wn.2d 281, 737 P.2d 1268, 68 A.L.R.4th 677 (1987).

Appellant Lynch relies on *In re McNerthney,* 95 Wn.2d 38, 621 P.2d 731 (1980), for determination of his sanction. In *McNerthney* a prosecuting attorney warned an acquaintance that a search warrant had been issued for the acquaintance's house. This court adopted the hearing officer's conclusion that McNerthney had revealed a confidence of his client, the State of Washington. This court ordered a letter of admonition, but no sanction, because of the mitigating circumstances of unreasonable delay in initiating the proceedings, absence of prior discipline, good reputation and total remorse for his misconduct. *In re McNerthney,* 95 Wn.2d 38, 41–42, 621 P.2d 731 (1980).

■ This case is distinguishable from *McNerthney*. Here there was not an unreasonable delay in initiating the proceedings, Mr. Lynch has previously been disciplined, and he showed no remorse for his conduct in this case until his hearing. Furthermore, no disciplinary case mandates a predetermined result. Bar discipline is tailored to fit the facts of each case. *In re Rentel,* 107 Wn.2d 276, 288, 729 P.2d 615 (1986).

■ This court looks with great favor upon the American Bar Association *Standards for Imposing Lawyer Sanctions* (1986) (ABA Standards). *See, e.g., In re Rentel,* 107 Wn.2d 276, 282, 729 P.2d 615 (1986); *In re Simmons,* 110 Wn.2d 925, 931, 757 P.2d 519 (1988). Indeed, we adopt those standards for use in all lawyer discipline cases.

The ABA Standards use the following framework to determine the appropriate sanction:

1. What ethical duty did the lawyer violate?

2. What was the lawyer's mental state?

3. What was the extent of the actual or potential injury caused by the lawyer's misconduct?

4. Are there any aggravating or mitigating circumstances?

ABA Standard 3.0.

In this case, Appellant Lynch by stipulation admitted to violating his oath of duties as attorney and engaging in conduct prejudicial to the administration of justice.

ABA Standard 7.2 states that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

The extent of potential injury in this case remains great. It caused mistrust between the drug enforcement unit and the prosecuting attorney's office to the extent that drug enforcement unit personnel ceased seeking advice from that office. Additionally, it placed drug enforcement unit members at risk of extreme danger because the photograph

showed the undercover officers in their working clothes. The effectiveness of their investigations was jeopardized. All drug enforcement unit personnel were rotated out of the unit 8 months after discovery of the photograph, even though they normally served staggered terms of 2 years.

Of the 10 aggravating factors suggested by the ABA Standards which may be considered to justify an increase in punishment, 3 apply in this case: prior discipline, experience in the practice of law, and refusal to acknowledge the wrongful nature of conduct. In 1984 Lynch was reprimanded for neglect of a legal matter and intentional failure to carry out a contract of employment. He has been a member of the Washington Bar since 1975. He did not acknowledge his misconduct in this case until the proceeding before the hearing officer. The statements he made even then did not completely acknowledge his misconduct,[9] nor did his statements in argument before this court.

Of the 13 mitigating factors suggested by the ABA Standards to justify a reduction in punishment, 2 apply in this case: character or reputation and absence of a dishonest or selfish motive. Mr. Lynch filed several affidavits attesting to

---

[9]Direct examination of Lynch by bar counsel:

Q. It never occurred to you that there was a potential of harm to any of those undercover officers?

A. At the time it didn't—it wasn't something that came into my mind at that time.

Q. You didn't even think about it?

A. You know it's hard for me to reconstruct exactly what was in my mind. I mean I can recall the day that I made the photocopy and being in . . . [the deputy prosecutor's] office, but specific intention, no I didn't think about it. In retrospect now, especially after following . . . [drug unit member] on the stand and seeing his demeanor and listening to what he said, I have the deepest regret that I've felt in my life. I mean that's been with me now for three years. . . .

Q. Did you say at that time [when confronted by prosecuting attorney], "I took the photocopy"?

A. No, I did not.

Q. Did you at that time admit you had any involvement?

A. I admitted that I knew who Brian Mackey was, but I also admitted that I knew a lot of other people that were not looked upon with favor and that they themselves did, too.

his character. He claims his motive for taking the photograph was merely to show it to a friend with a drug problem to dissuade him on his attitude about recognizing undercover agents. This might constitute an unselfish motive, if believed. This is hardly a credible explanation under the limited evidence in this case.

It is our conclusion that the more appropriate sanction in this case is suspension for 2 years. This is justified because of the potential harm to effective operation of the drug enforcement unit and risk of harm to its members, the failure of Mr. Lynch to reveal information about the photocopy of the photograph, the incredibility of his story, and his lack of remorse and acknowledgment of misconduct prior to the proceeding before the hearing officer.

The Bar Association filed a statement of costs and expenses requesting assessment of costs and expenses against Appellant Lynch in the amount of $1,129.57. The Board awarded these costs. Pursuant to RLD 5.7(f), this court may impose costs. The amount indicated does not include the costs of this appeal. Pursuant to RAP 14.4, a party may file costs within 10 days after filing a decision terminating review.

This court determines that the procedures before the Washington State Bar Association Disciplinary Board did not violate Appellant Lynch's right to due process. The Board had authority to amend the findings of fact. Mr. Lynch's argument of biased decisionmaker has no merit.

We conclude that suspension for 2 years is an appropriate sanction for the misconduct of John S. Lynch III. Costs are assessed against him.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and GUY, JJ., concur.