[No. C.D. 10391. En Banc. July 22, 1982.]

*In the Matter of the Disciplinary Proceeding*
*Against* SHIRLEY M. SAULNIER, *an*
*Attorney at Law.*

*Caroline D. Davis,* for Bar Association.

*Shirley M. Saulnier,* pro se.

BRACHTENBACH, C.J.—The Washington State Bar Association charges attorney Shirley M. Saulnier with engaging in illegal conduct involving moral turpitude in violation of Code of Professional Responsibility Discipline Rules 1-102(A)(3), (4) and (6).

These charges arise out of an incident occurring in 1980. Ms. Saulnier was apprehended while leaving a department store with merchandise that she had not purchased. When confronted by a security guard Ms. Saulnier admitted having the merchandise.

Since Ms. Saulnier had merchandise totaling over $300, she was charged with theft in the second degree, a felony.

To avoid a public trial Ms. Saulnier pleaded guilty to theft in the third degree, a gross misdemeanor.

The bar association charges that Ms. Saulnier's actions violate the Code of Professional Responsibility Discipline Rules 1–102(A)(3), (4) and (6). These provisions prohibit illegal conduct involving moral turpitude, CPR DR 1–102(A)(3), conduct involving dishonesty, fraud, deceit or misrepresentation, CPR DR 1–102(A)(4), and conduct that adversely reflects on a lawyer's ability to practice law, CPR DR 1–102(A)(6).

At the disciplinary hearing Ms. Saulnier admitted that she was cognizant of placing the items into her bag but explained "I didn't feel good, I couldn't get service and it was like a consumer revolt type of action." Ms. Saulnier argued that these factors negated the requisite intent element of moral turpitude.

The hearing panel officer found that the incident was a "single aberrational event surrounded by mitigating circumstances." He recommended that Ms. Saulnier should be suspended, but that the suspension be suspended for a period of 2 years. During this period Ms. Saulnier would voluntarily refrain from the practice of law. The Disciplinary Board, however, struck the provision suspending the suspension and recommended a straight 2–year suspension. We concur with the recommendation of the Disciplinary Board.

The initial question in attorney discipline cases is whether or not the attorney's conduct involved moral turpitude. DRA 1.1(a). The hearing panel officer found that the intentional taking of merchandise, without payment, involved moral turpitude. This conduct violates DRA 1.1(a). The hearing panel officer's finding is consistent with our prior case law. *See, e.g., In re Anderson,* 73 Wn.2d 587, 439 P.2d 981 (1968); *In re Dalton,* 60 Wn.2d 726, 375 P.2d 258 (1962).

The facts of this case support the hearing panel officer's finding but not his recommendation of a suspended suspension. In this case there is no allegation that the act of

taking the items was unintentional, only that the respondent's mental state negated the intent to steal. Yet respondent took merchandise from *three* different stores, The Bon, Frederick & Nelson and Nordstrom. Consequently, we find respondent's argument that this was an isolated incident, prompted by personal frustration with poor service, unpersuasive and inadequate to negate a finding of moral turpitude.

▇ Turning then to the question of the appropriate discipline, we conclude that the 2–year suspension is warranted. First, Ms. Saulnier failed to produce evidence to justify a conclusion that the mitigating factors she relies upon either caused the incident or justify a lesser sanction. Respondent has offered letters describing her general physical and mental condition at the time of the theft. Nothing in these letters, however, connects her physical or emotional indisposition to the incident. Finally, the need to assure the public confidence in our legal system requires that we demand obedience of the laws by all members of the bar.

Shirley M. Saulnier is hereby suspended for 2 years from the practice of law in the State of Washington. Costs of $169.95 are hereby assessed.

ROSELLINI, STAFFORD, DORE, and PEARSON, JJ., concur.

DOLLIVER, J. (dissenting)—The hearing officer recommended a 2–year suspension which would be suspended for 2 years. At the end of this 2–year probation if certain terms and conditions were met by Ms. Saulnier the action by the bar association would be dismissed. I believe this would be adequate discipline and thus dissent.

In response to the majority, I make three comments: (1) Contrary to the majority, the facts show the taking of the items of merchandise was an isolated incident. Even though three stores were involved, they were all adjacent department stores at a large shopping mall and the taking of the merchandise occurred in a period of not more than 1 hour.

The record is clear the incident was isolated in time and place as well as with reference to the prior conduct and activities of Ms. Saulnier.

2. As to whether there were mitigating factors, the hearing officer listened to the testimony, observed Ms. Saulnier, and was in a far better position than anyone merely reading the record to make a determination on this question. The findings of fact by the hearing officer, which were also adopted by the Disciplinary Board, state there was a "demonstration of mitigating factors surrounding [Ms. Saulnier's] arrest". There was sufficient evidence in the record for the experienced hearing officer to make this finding. The majority ignores this finding and without either testimonial observation or the citation of evidence to the contrary declares there were no mitigating circumstances. This is an unwarranted action. No citizen and certainly not a member of the bar regulated by this court should be given this kind of treatment.

3. Finally, the majority justifies its quantum of punishment by "the need to assure public confidence in our legal system". I continue to question from what mysterious soundings this court obtains its understanding of the public temperament. *See In re Rosellini,* 97 Wn.2d 373, 646 P.2d 122 (1982) (Dolliver, J., dissenting). Rather than pursue the will–o'–the–wisp of public confidence, the court ought to concentrate on the individual in front of it and determine the degree of punishment needed to protect the public. Nothing in the order of the Disciplinary Board or in the majority opinion intimates the public will somehow be better protected by a straight 2–year suspension. The words of the hearing officer are instructive:

> I am convinced that the incident described in the findings was a solitary aberration, for which the respondent has already paid dearly, which does not reflect on her ability to practice law, indicate any danger to the public and has not the slightest possibility of recurrence.

Although public confidence is desirable and indeed indispensable, it cannot be pursued; it must be earned. It is dif-

ficult for me to conclude the discipline imposed here will in any way help to accomplish that end. While some may noisily demand the maximum punishment for all offenders, the confidence of the public is not gained by becoming captive to these sentiments. "Rather, public confidence is built by a Supreme Court which views each litigant as that litigant comes before it; which takes reasonable and appropriate action to protect the public interest and brings appropriate punishment to the offender; and which makes those judgments openly, fearlessly, and without regard to the winds of public opinion." *In re Rosellini, supra* at 384 (Dolliver, J., dissenting).

UTTER, WILLIAMS, and DIMMICK, JJ., concur with DOLLIVER, J.