KENTUCKY BAR ASSOCIATION, Complainant,

v.

Benjamin J. JONES, Respondent.

No. 87-CSC-810-KB.

Supreme Court of Kentucky.

Oct. 27, 1988.

OPINION AND ORDER OF THE COURT

This case is a disciplinary proceeding against the respondent, Benjamin J. Jones. The issue we decide is the correctness of the finding of the Board of Governors of the Kentucky Bar Association in determining that the respondent is not guilty of a breach of the Code of Professional Responsibility. Believing that the Board of Governors erred, we have examined the entire record in this case, pursuant of SCR

3.370(7), and we decline to follow the recommendation of that Board.

The facts and procedures are simple and uncontroverted. On September 25, 1985, at approximately 2:00 a.m., the respondent was driving his automobile on Interstate 64, in Bath County. Respondent's car collided with a tractor-trailer that was parked on the emergency strip of the highway. By his own admission, respondent was "legally drunk." Several hours after the accident, respondent's blood had an alcohol content of .14%. Following an indictment and trial, respondent was convicted by a jury of two counts of reckless homicide and his sentence was set at two years on each count. Both convictions are Class D felonies, and are violations of KRS 507.050. The judgment was not appealed and the sentences were set by the trial court to run concurrently.

The Inquiry Tribunal filed a charge of unethical conduct based on the above facts. The charge alleged that the respondent violated Disciplinary Rules 1–102(A)(3) and (6) of the Code of Professional Responsibility.[1] As noted, following a hearing before the Board of Governors of the Kentucky Bar Association, respondent was found not guilty by a vote of 16–0, and it was recommended that this Court dismiss the charge. We have declined to do so, and thus enter this opinion and order.

■ Basically, respondent argues that his admitted conduct does not violate the Code of Professional Responsibility. He argues that his crime does not "bring the bench and bar into disrepute." He further argues that a conviction of reckless homicide is not a suitable basis for disciplinary action since it has "nothing to do with his law practice and with his role as a representative of the Kentucky Bar". He also argues that reckless homicide is not a crime involving moral turpitude. We disagree.

The basis for the disciplinary charges appear in the American Bar Association's Code of Professional Responsibility. The appropriate sections are as follows:

"DR1–102

(A) A lawyer shall not:

(3) Engage in illegal conduct involving moral turpitude.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The specific issue we must decide is whether two convictions of reckless homicide constitute a violation of the Code, and, if so, what punishment should be administered by this Court.

The issue of whether reckless homicide constitutes a violation of these ethical proscriptions, while not *specifically* decided by this Court, has been effectively decided by the seminal case of *Kentucky State Bar Association v. Vincent*, Ky., 537 S.W.2d 171 (1976).

In that case, the respondent, Duane Vincent, was charged in the United States District Court for the Eastern District of Kentucky with three counts of willfully and knowingly failing to file income tax returns for three years. He pled guilty to one count and was sentenced to one year in prison. The Kentucky Bar Association filed disciplinary charges, alleging that Vincent's conduct constituted unethical and/or unprofessional conduct which was calculated to bring the bench and bar of the Commonwealth into disrepute. Respondent argued that he should not be disciplined because the offense to which he pled guilty was not one which involved moral turpitude. The trial committee found, indeed, that the offense did not involve moral turpitude. However, the Board of Governors of the Kentucky Bar Association found Vincent guilty of "unprofessional and/or unethical conduct" and recommended a six month suspension from the practice of law. It did not address the question of moral turpitude.

While we did not specifically decide the issue of moral turpitude in that income tax matter, we did say this:

"It may be that we have defined the limits of conduct too broadly in speaking in subjective terms such as 'conviction of

---

**1.** This Code was adopted, initially, by this Court on 1–1–78. SCR 3.130.

an offense involving moral turpitude or of being convicted of a serious misdemeanor or a felony.' *In any event, the real criterion is and should be whether the attorney is guilty of such unprofessional and unethical conduct which is calculated to bring the bench and bar into disrepute. It is beyond cavil that an attorney who is convicted of an offense involving moral turpitude, or who is convicted of an intentional and serious misdemeanor, or who is convicted of a felony, is guilty of such conduct as is calculated to bring the bench and bar into disrepute.*"

*Id.,* at p. 173 (emphasis added).

Thus, in *Vincent,* we decided that "moral turpitude" is not the real issue in a disciplinary case. The real issue is whether the attorney is guilty of "... such unprofessional and unethical conduct which is calculated to bring the bench and bar into disrepute." *Id.* We further decided that not only offenses involving moral turpitude are punishable, but also any *intentional misdemeanor,* or *felony,* is such conduct as would bring the bench and bar into disrepute. It is clear that *Vincent* stands for the proposition that attorneys who commit crimes involving moral turpitude *and* intentional misdemeanors and felonies are punishable. Under our view of the case *sub judice,* it is not necessary to determine if two convictions of reckless homicide involve moral turpitude. Both are felonies, both involve taking the lives of two innocent people, and both in this case involve an attorney who clearly was driving his car while drunk.

An attorney is an officer of the court and it is his duty and it is his responsibility to conduct his personal *and* professional life in a manner as to be above reproach. Consider what we said in *Vincent,*

"Other than one's own confidante, *no person occupies such close relationship to the general public as do the members of the legal profession.* It is the attorney to whom the intimacies of family relations are confided; it is the attorney who is entrusted with advising as to the management and disposition of the fami-

ly estate; *it is the attorney who is entrusted with the protection of our constitutional and statutory rights. Such a burden resting upon the members of the legal profession must not be taken lightly.*

"* * * that you will faithfully execute, to the best of your ability, the office of attorney at law * * *" are not idle words, to which all attorneys have pledged their allegiance. *The conduct of even one attorney which would embarrass the legal profession will not be tolerated.*"

*Id.,* at p. 173 (emphasis added).

We believe that the Board of Governors ruling retreats too far from the high standards set by this Court in *Vincent.* Clearly, driving an automobile while drunk, and killing two persons is not acceptable conduct for an attorney when tested by the standards set out in *Vincent.* It is beyond cavil that such conduct brings the bench and bar into disrepute.

We also reject the argument that all disciplinary cases must evolve from the attorney's practice of law. The casebooks contain a plethora of precedents that hold otherwise. See *West's Kentucky Digest,* Attorney and Client, key numbers 39 and 57. A few examples will suffice without unduly lengthening this opinion. *Kentucky Bar Association v. White,* Ky., 613 S.W.2d 132 (1981) (guilty plea to wire fraud and income tax evasion); *Kentucky Bar Association v. Sandidge,* Ky., 572 S.W.2d 160 (1978) (knowingly and fraudulently appropriating property of another); *Kentucky Bar Association v. Clay,* Ky., 601 S.W.2d 287 (1980) (conviction of Class A misdemeanor of assault in third degree terroristic threatening); *Kentucky State Bar Association v. Kohler,* Ky., 497 S.W.2d 724 (1973) (plea to a felony); and *Kentucky State Bar Association v. Smith,* 492 S.W. 2d 880 (plea to a misdemeanor), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 109 (1973).

It is clear that the decision of the Board of Governors in attorney disciplinary proceedings is advisory only. Final decisions of guilt and punishment *can only be made*

*by the Supreme Court,* and it is done on the basis of a *de novo* consideration of pleadings and trial review. *Kentucky Bar Association v. Berry,* Ky., 626 S.W.2d 632 (1981). SCR 3.360, 3.370(1).

Based on the record in this case, this Court suspends the respondent, Benjamin J. Jones, for a period of two years from the practice of law. The suspension shall be effective on the finality of this opinion and order. Respondent shall also pay all costs of this action.

STEPHENS, C.J., and GANT, LAMBERT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents in a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I disagree.

Suspension or disbarment should not be an additional criminal penalty imposed because the guilty person happens to be a lawyer.

The Board of Governors of the Kentucky Bar Association recommended by unanimous vote that this complaint be dismissed because this incident was not "unprofessional and unethical conduct which is calculated to bring the bench and bar into disrepute." This lawyer's misconduct reflected on him as an individual and he has been punished for it. It did not reflect separately on this lawyer's ability to practice law, or on the profession as a whole. We are being stampeded by the public's outrage against drunk drivers, an outrage which I share, into imposing an additional criminal penalty when the issue before us is professional misconduct, which is something entirely different.

Jones was convicted of reckless homicide based on a motor vehicle accident. Recklessness is defined as failing to perceive a substantial and unjustifiable risk. KRS 501.020(3). If he had been "aware of and consciously disregard[ed]" the risk, he would have been convicted of manslaughter in the second degree, or, if there was extreme indifference to human life, of wan-ton murder. KRS 501.020(3); 507.020(1)(b); 507.040.

This is a question of "mens rea." Was there a state of mind that discredits a lawyer's ability to represent clients in the practice of law? A state of mind that is merely "reckless" does not. To state this fact in no way diminishes the seriousness of drinking and driving; or the fact that two people were killed because of this recklessness. The law has properly imposed a criminal penalty for this. We should not impose an additional punishment for a criminal offense that is not professional misconduct because this offender happens to be a lawyer.

If the Majority Opinion is right, every lawyer (and judge) who has ever gotten behind the wheel after drinking an intoxicating liquor, thinking he was fit to drive when he wasn't, should feel duty bound to suspend his professional career for two years for having done so. The bench and bar would be decimated and the public would be poorly served. This will not appear an overstatement unless you believe that the only sin is in getting caught. We would not in any way depreciate the criminality of reckless homicide or its proper punishment if we restrain the impulse to punish this offender by suspension or disbarment.

If the proof here were that the offender was a chronic alcoholic, or if the evidence showed that on this occasion he was so drunk that getting behind the wheel of a car amounted to wanton indifference to human life, I would reach a different result. Having lawyers who are habitually drunk, or wantonly indifferent to human life, does not serve the public interest. But recklessness consists only of failing to perceive an unreasonable risk of harm. This act of recklessness was not grounds for suspension or disbarment.