[No. 8630. En Banc. December 13, 1990.]

*In the Matter of the Disciplinary Proceeding
Against* PATRICK M. CURRAN, *an
Attorney at Law.*

*Randy Beitel,* for Bar Association.

*Pence & Dawson,* by *Christopher C. Pence,* for respondent lawyer.

UTTER, J.—The Disciplinary Board of the Washington State Bar Association (hereinafter Disciplinary Board) decided that Patrick Curran, an attorney, violated no rules of professional conduct when he was convicted of vehicular homicide. Accordingly, it terminated Mr. Curran's interim suspension, which attached automatically upon conviction of a felony, and ordered no disciplinary action. We hold that vehicular homicide reflects a disregard for the rule of law, RLD 1.1(a), and suspend him from practice for a period of 6 months beginning on the date of his oral argument before this court.

## I

Until recently, Mr. Curran practiced with the firm of Riach, Gese, Seather, Watts & Curran in Lynnwood. In that capacity, he served as principal counsel for the City of Lynnwood and a number of utilities.

Following an afternoon of eating lunch and drinking with several clients, Curran attempted to drive three of the clients home on June 3, 1987. Curran recalls that the drinks consisted of at least a margarita before lunch, a beer with a light lunch, and a gin on the rocks after lunch. Curran does not remember what occurred after the third drink, but he got in the car and attempted to drive his luncheon companions home. His vehicle left the roadway, killing two of the passengers. As a result, a jury convicted Curran of two counts of vehicular homicide by (1) driving a vehicle while under the influence of alcohol, or (2) operating a vehicle with disregard for the safety of others. *See* RCW 46.61.520. The jury was instructed that a medical condition unforeseeable to Mr. Curran which prevented him from forming a conscious decision to drive was a defense, even if the jury found he was driving under the influence. On December 9, 1988, the trial judge sentenced Curran to 26 months on each of the two counts to run concurrently.

This court has since accepted review of Curran's appeal in the criminal case. In that case, Curran challenges the admission of evidence as to his blood alcohol level, which was reported to be .18. See Brief of Appellant, at ii.

Mr. Curran is a diabetic. The hearing examiner found that Curran gave himself a dose of insulin prior to lunch which proved to be excessive given the size of the meal. Mr. Curran could not recall events following lunch and attributes this failure of memory to excessive insulin. But the hearing examiner rejected a proposed factual finding that Mr. Curran experienced a medical imbalance which impaired his judgment.

Curran has never been an alcoholic. Mr. Curran has expressed remorse for the accident and has acted personally to cause his insurance carrier to tender the full amount of

his liability coverage, $1.5 million, to the civil claimants against him, thus bringing about a full settlement. Before and after the accident, Mr. Curran has been of good moral character and enjoyed a good reputation in the community for integrity and honesty.

This court suspended Curran from the practice of law "pending disposition of disciplinary proceedings against him" on January 18, 1989. *See* Rules for Lawyer Discipline 3.1(e), (f). On April 17, 1989, Mr. Curran filed a petition to terminate interim suspension pursuant to RLD 3.1(g). The Disciplinary Board, by a vote of 10 to 1, recommended that we terminate Mr. Curran's interim suspension for cause. RLD 3.1(g). On June 8, 1989, we rejected the recommendation at an en banc administrative conference.

Bar counsel charged Curran with committing an "act . . . which reflects disregard for the rule of law", *see* RLD 1.1(a); with committing a criminal act that reflects adversely on his fitness as a lawyer, Rules of Professional Conduct 8.4(b), *see* RLD 1.1(i); and with conduct prejudicial to the administration of justice, RPC 8.4(d), *see* RLD 1.1(i). Bar counsel requested a suspension lasting 6 months or until termination of parole.

Following a full hearing in August 1989, the hearing examiner concluded that bar counsel had failed to establish any rule violations. The Disciplinary Board voted 9 to 3 to accept the examiner's recommendation, and recommended Curran's reinstatement. Two members dissented, urging disbarment. One member dissented, but did not agree that disbarment was the appropriate sanction.

The Board of Governors refused bar counsel's recommendation to seek discretionary review. *See* RLD 7.3(c). Accordingly, bar counsel notified this court of dismissal of the disciplinary proceedings, as he is required to do. RLD 3.1(h). We noted that the result reached in the Curran case appeared to be inconsistent with the treatment of Gordon Willhite, an attorney who had committed vehicular homicide. *In re Willhite,* noted at 103 Wn.2d ff 1033 (1985)

(C.D. 2303).[1] The bar association had found that Mr. Willhite's conduct reflected a disrespect for the rule of law and had recommended a 12–month suspension. This court had approved a stipulation implementing this recommendation.

We responded to notification of dismissal of disciplinary proceedings in the Curran vehicular homicide case by denying reinstatement and directing counsel to prepare briefs on the following issues:

(a) Whether Patrick Curran's conduct involved moral turpitude.

(b) Whether Patrick Curran's conduct reflects adversely on his fitness as a lawyer.

(c) Whether Patrick Curran's conduct was prejudicial to the administration of justice.

(d) What is the effect of the Bar Association's stipulation regarding moral turpitude.

(e) Should reinstatement occur while respondent's conviction is in effect, including the issue of the claimed deprivation of civil rights.

Order, Bar No. 8630 (Mar. 6, 1990). The court relied on its inherent authority to dispose of individual cases involving lawyer discipline in deciding to review the case. RLD 2.1. Following submission of briefs by the parties, the court asked the parties to address the issue of whether Curran's conduct reflected disregard for the rule of law. *See* RLD 1.1(a); Rules of Appellate Procedure 12.1(b).

## II

We first address Curran's vigorous objection to our decision to review this case on our own motion. He concedes that this court has the inherent power to review bar discipline cases, *see* RLD 2.1, but argues that we must exercise that power within the constraints contained in the Rules for Lawyer Discipline which we have adopted. These rules, according to Curran, do not authorize this court to review a case on its own motion. We agree that we should exercise our powers within the confines of the rules as

---

[1] The court's approval of this stipulation appeared in the advance sheets, but does not appear in the bound volume.

interpreted in our cases. We must therefore decide whether the rules authorize review upon the motion of the court.

Title 7 of the Rules for Lawyer Discipline governs appeal routes in attorney discipline cases. RLD 7.1(a) explains that two methods of appeal exist for review of lawyer discipline cases, review as a matter of right, called appeal, RLD 7.1(a)(1), and review by permission of the Supreme Court, called discretionary review, RLD 7.1(a)(2). Rule 7.1(b) states that this rule shall not affect the power of the Supreme Court to exercise its inherent and exclusive jurisdiction over the lawyer discipline system. RLD 7.1(b). That inherent power includes review of individual cases. *See* RLD 2.1. This suggests rather strongly that we may review cases on our own motion, even when no appeal can be made and no motion for discretionary review has been filed.

Curran, however, notes that RLD 7.3(a) states that Disciplinary Board decisions not providing for suspension or disbarment "are subject to review by the Supreme Court only through discretionary review." RLD 7.3(a). Neither the Board of Governors nor Mr. Curran exercised their rights to seek discretionary review before this court. *See* RLD 7.3(b), 7.3(c). Curran argues that the lack of a petition for review precludes Supreme Court review because of the exclusive language of RLD 7.3(a).

This argument draws this language from its context. RLD 7.2 explains that a lawyer has a right to appeal when the bar has suspended or disbarred the lawyer. RLD 7.3(a)'s statement that decisions not providing for suspension are reviewable only through discretionary review follows the appeal provisions in RLD 7.2. Read in context, RLD 7.3(a) simply means that an appeal as of right is not available when the bar declines to discipline a lawyer through suspension or disbarment. In light of RLD 7.1(b)'s statement that the rule providing for appeal and discretionary review does not affect the powers of this court to review cases, this is the only possible interpretation of RLD

7.3(a). The text of the rules authorize our review of disciplinary matters on our own motion.

We recently relied on RLD 7.1(b) to review a case on our own motion. *See In re Felice,* 112 Wn.2d 520, 525, 772 P.2d 505 (1989). *Felice* shows that RLD 7.3(a) limits the ability of disciplined lawyers not suspended or disbarred and the Board of Governors to appeal to this court. They cannot appeal cases not involving suspension or disbarment; they can only seek discretionary review. The rule does not limit our authority to review a case on our own motion. *See also In re Johnson,* 114 Wn.2d 737, 738, 744, 790 P.2d 1227 (1990); *In re Stroh,* 97 Wn.2d 289, 294, 644 P.2d 1161 (1982), *cert. denied,* 459 U.S. 1202 (1983).

■ We emphasize, however, that we do not exercise this power lightly. Our responsibility to ensure consistent discipline of attorneys requires us to exercise this power when gross inconsistencies appear in cases involving similar conduct. The conclusion that Mr. Curran's vehicular homicide shows no disregard for the rule of law appears grossly inconsistent with the conclusion that Mr. Willhite's vehicular homicide reflects a disregard for the rule of law.[2]

■ Under our rules, bar counsel may not seek discretionary review of a decision denying disciplinary measures on his own. Rather, bar counsel may file a petition for discretionary review if the Board of Governors authorizes the petition. RLD 7.3(c). We chose to exercise our power of review on our own motion inasmuch as this case calls into question the very purposes of lawyer discipline and because it involves serious misconduct not directly related to Mr. Curran's professional life. The modern trend focuses lawyer discipline fairly tightly upon conduct which directly interferes with the administration of justice or occasions doubt about a lawyer's competence or honesty. The American Bar

---

[2]While we are concerned about the conflict between our approval of the *Willhite* stipulation and the treatment of Mr. Curran, Curran's contention that the approval of a stipulation is not binding precedent is correct. In light of our commitment to consistency in attorney discipline cases, we cannot disregard it entirely, however.

Association Model Rules of Professional Conduct (1983) do not forbid all acts involving "moral turpitude" as the prior ABA Model Code of Professional Responsibility had. Model Rules of Professional Conduct Rule 8.4 (code comparison). This court's rules, however, do not fully embrace the modern trend. They forbid all acts involving "moral turpitude" and have recently been amended to include an "act which reflects disregard for the rule of law". RLD 1.1(a). On the other hand, this court has adopted the *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986), which are keyed to the Model Rules, and embrace the modern trend by putting more emphasis on disciplining lawyers for violation of practice norms. Thus, the question of whether Curran's acts merit discipline and if so, what sort of discipline, are very difficult and close questions.

The refusal of the Board of Governors (Board) to grant bar counsel's request to have us review this case shows some need for guidance on what criteria should govern decisions to seek discretionary review. For the most part, we prefer to leave this matter to the Board. The Board should, however, seek discretionary review when a case presents difficult legal issues of first impression. The Board should also seek discretionary review when one of its decisions seems at odds with the spirit of any of our published decisions. The Board should consider granting such a petition when the Disciplinary Board is seriously divided about a disciplinary issue. The Board's decision to deny bar counsel's petition for review is unreviewable. We will, however, review matters on our own motion if necessary, even absent a petition for discretionary review. *See In re Stroh,* 97 Wn.2d at 294.

### III

Bar counsel argues that Curran's conduct reflects a disregard for the rule of law. *See* RLD 1.1(a). Curran argues that the rule forbidding conduct reflecting a disregard for the rule of law cannot provide a basis for disciplining attorneys

because it is unconstitutionally vague. He also argues that his conduct does not reflect a disregard for the rule of law.

A law forbidding conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. *Baggett v. Bullitt*, 377 U.S. 360, 367, 12 L. Ed. 2d 377, 84 S. Ct. 1316 (1964); *Clyde Hill v. Roisen*, 111 Wn.2d 912, 916, 767 P.2d 1375 (1989). The *Baggett* case struck statutes requiring the following loyalty oath:

> "I solemnly swear (or affirm) that I will support the constitution and laws of the United States of America and of the State of Washington, and will by precept and example promote respect for the flag and the institutions of the United States of America and the State of Washington, reverence for law and order and undivided allegiance to the government of the United States."

*Baggett*, 377 U.S. at 361–62 (quoting Laws of 1931, ch. 103, § 1). The clause of RLD 1.1(a), forbidding any act reflecting a disregard for the rule of law, is almost as vague as this oath.

The *Baggett* opinion, which Curran relies on, dealt mainly with First Amendment concerns. The language of this rule raises those concerns as well. Rather than invite First Amendment problems, we choose to give these words a narrowing construction. This phrase of RLD 1.1(a) can only be used to discipline a lawyer for violations of the criminal law.

This law is not so vague as to be unconstitutional, given this limiting construction. *See Law Students Civ. Rights Research Coun., Inc. v. Wadmond*, 401 U.S. 154, 156, 27 L. Ed. 2d 749, 91 S. Ct. 720 (1971) (upholding requirement that applicants for the New York bar possess "the character and general fitness requisite for an attorney and counsellor–at–law"); *State ex rel. Nebraska State Bar Ass'n v. Kirshen*, 232 Neb. 445, 441 N.W.2d 161 (1989) (upholding prohibition on conduct adversely reflecting on fitness to practice law); *Jordan v. DeGeorge*, 341 U.S. 223, 231–32, 95 L. Ed. 2d 886, 71 S. Ct. 703 (1951) (upholding the constitutionality of deporting aliens committing offenses involving

"moral turpitude"). In *Jordan,* the Supreme Court found that judicial construction had rendered the term "moral turpitude" sufficiently definite to survive constitutional scrutiny. Importantly, the Court stated that a statute will not be considered unconstitutionally vague just because it is difficult to determine whether certain marginal offenses are within the meaning of the language under attack. *Jordan,* 341 U.S. at 231.

Standards may be used in lawyer disciplinary cases which would be impermissibly vague in other contexts. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 666, 85 L. Ed. 2d 652, 105 S. Ct. 2265 (1985) (Brennan, J., dissenting). Where the state has otherwise forbidden certain conduct in reasonably clear terms, the due process clause does not stand in the way of attorney discipline. *See Zauderer,* 471 U.S. at 666 (Brennan, J., dissenting). Therefore, we hold that an attorney may be disciplined for violations of the criminal law reflecting disregard for the rule of law and pass to the merits.

In evaluating a disciplinary charge this court will not disturb the hearing examiner's finding of facts if supported by evidence. *Felice,* 112 Wn.2d at 525. "Further challenges to the hearing examiner's conclusions of law will fail if these conclusions are supported by the findings of fact." *Felice,* at 525.

Bar counsel has not challenged any of the hearing examiner's finding of facts so we leave them undisturbed. But the nature of these factual findings requires some comment and analysis before we can properly resolve the claims before us. Bar counsel quite properly relied on the jury verdict in the criminal case to establish facts needed to pursue discipline of Mr. Curran. The jury verdict, however, was ambiguous as to whether Curran drove while intoxicated or acted with disregard for the safety of others. Bar counsel introduced very little evidence tending to clarify this ambiguity. While our rules do not allow a lawyer to challenge facts established through the jury verdict, RLD 4.9, they do not preclude bar counsel from clarifying a jury

verdict through introduction of portions of the criminal record or live testimony tending to detail the nature of the act committed. A lawyer is free to challenge such evidence insofar as his argument does not call into question those facts and legal conclusions that the jury must have made in order to arrive at a verdict. Because bar counsel introduced little additional evidence in this case we are left with Mr. Curran's account of the events leading up to his vehicular homicide. This account is not terribly helpful because he does not remember what happened after his third drink. While we have confined our factual statement to the facts presented in the bar discipline case, we cannot help but notice that the criminal record before us in Mr. Curran's criminal appeal contains more damaging information. Moreover, the hearing examiner's factual findings do not really state a position on what actually happened. Rather, the findings of fact dutifully recite the testimony presented without drawing ultimate conclusions. Factual findings should state ultimate conclusions, not recite the evidence. *In re Kennedy,* 80 Wn.2d 222, 231, 492 P.2d 1364 (1972).

Fortunately, we need not go beyond the record of the bar discipline case in order to resolve this case. The record in this case establishes that Mr. Curran got drunk and then deliberately chose to drive. The examiner found that Mr. Curran's insulin injection proved excessive because the size of the meal turned out to be smaller than anticipated. But the jury concluded that no condition unforeseeable to Mr. Curran, such as excessive insulin in the blood due to a smaller than expected meal, prevented him from making a conscious decision to drive. Accordingly, the hearing examiner rejected a proposed finding that Mr. Curran's insulin injection impaired his judgment as inconsistent with the jury verdict. The hearing examiner found that Mr. Curran had a blood alcohol level of .18. It's quite clear from this record that Mr. Curran chose to drive while drunk.

The hearing examiner concluded that Curran's actions did not reflect a disregard for the rule of law. If the facts support this conclusion, this court may not upset it. *Felice,*

112 Wn.2d at 525. The facts do not support the conclusion. The factual findings made show that Curran decided to drive while intoxicated. By so doing, Mr. Curran decided to risk the lives of his passengers. Whether his disregard for their safety or his drunkenness killed them is of no relevance to the disregard for the rule of law inquiry.

The phrase "disrespect for our rule of law" appears in opinions upholding the constitutionality of automatic sanctions upon a felony conviction. *See United States v. Jennings,* 724 F.2d 436, 450 (5th Cir. 1984), *cert. denied,* 467 U.S. 1227; *Mitchell v. Association of Bar,* 40 N.Y.2d 153, 156, 386 N.Y.S.2d 95, 97, 351 N.E.2d 743, 745 (1976). These opinions suggest that any felony involves a disrespect for the rule of law. Washington, however, has no automatic sanctions for felons, other than interim suspension, *see* RLD 3.1(e); *In re McGrath,* 98 Wn.2d 337, 344, 655 P.2d 232 (1982) ("There is no automatic felony disbarment rule in this state."). Accordingly, we must develop some criteria by which to judge which criminal violations merit sanctions under this rule.

We begin by explaining why acts reflecting disregard for the rule of law merit attorney discipline. Our system of government is based on the notion that democratically established law governs disputes between people and defines which conduct is so abhorrent that it merits criminal sanctions. The lawyer has a key role to play in seeing to it that general rules actually determine the results of particular disputes. The lawyer's presentation of facts enables judges to decide those disputes which cannot be settled. The lawyer also identifies those rules of law which apply to a situation. Most rules of professional conduct apply to the lawyer's role in advising clients and representing them before courts.

If the legal system depended only upon legal processes involving lawyers to secure compliance with our laws, however, it would break down. The legal system relies more heavily, but less obviously, on voluntary compliance with

the law than it does on enforcement or even dispute resolution. The respect which our legal institutions command makes this possible.

Unfortunately, violations of the law by lawyers contribute to erosion of respect for legal institutions and the law. As we have stated on many occasions, the purposes of lawyer discipline are to "protect the public *and* to preserve confidence in the legal system." (Italics ours.) *In re Rentel,* 107 Wn.2d 276, 282, 729 P.2d 615 (1986). The existence of a rule which may apply to conduct not involving an attorney in a professional role attests to the continuing vitality of the concern for preserving confidence in the legal system. *See* RLD 1.1(a).

On the other hand, not all legal violations by attorneys reflect a disregard for the rule of law. Some involve not disregard, but defiance on the basis of conscience. Others may involve accidental conduct.

Moreover, the purposes of bar discipline do not precisely duplicate the purposes of the criminal law. *See In re Brown,* 97 Wn.2d 273, 275, 644 P.2d 669 (1982) (punishment is not a proper basis for discipline). The criminal justice system bears the primary responsibility for enforcing compliance with the criminal code, not the bar disciplinary system.

In determining which criminal conduct reflects disregard for the rule of law requiring bar discipline to supplement criminal sanctions, the bar association should consider two factors—the frequency of violation, and the seriousness of the injury caused. Repeated violations of the law show the kind of disregard which sets such a poor example for the community at large that it may merit discipline under this rule. *See, e.g., In re Alkow,* 64 Cal. 2d 838, 415 P.2d 800, 51 Cal. Rptr. 912 (1966) (suspending an attorney who committed vehicular homicide who had a history of traffic offenses). Curran does not have a record of repeated law violations, so this does not justify imposing discipline in this case.

Criminal conduct having particularly serious consequences merits bar discipline as well. Generally speaking, such conduct shows that the actor was willing to break the law even though his or her actions could cause injuries the law takes very seriously.

We realize that Curran did not intend to kill the people he attempted to drive home. He did, however, choose to drive. We think the willingness to take that much risk of causing death or serious injury through violation of the criminal law reflects a disregard for the rule of law serious enough to warrant sanctions beyond those imposed by the criminal justice system.

The Kentucky Supreme Court suspended an attorney convicted of two counts of vehicular homicide and relied heavily on the fact that his actions would bring disrepute to the bar if left unpunished. *Kentucky Bar Ass'n v. Jones,* 759 S.W.2d 61, 63 (Ky. 1988). We agree that attorneys convicted of crimes involving violent death of their victims bring disrepute to the bar.[3] More importantly, they bring the kind of disrepute which undermines the respect for legal institutions which undergirds voluntary compliance with the law in this country. Accordingly, we find that Curran's actions reflect disregard for the rule of law and merit discipline.

Curran argues that the bar does not discipline drunken drivers and therefore cannot discipline him. This overlooks the seriousness of the consequences arising from his voluntary act. The record does show that bar counsel successfully charged Gordon Willhite with disregard for the rule of law for his vehicular homicide. Insofar as past practice of the bar is relevant to our determination here, that practice supports bar counsel, not Curran.

---

[3]The hearing examiner's "finding" that Curran's reinstatement pending his criminal appeal would not adversely affect public confidence and respect for the bar does not preclude our conclusion. We focus our inquiry on the question of whether allowing an attorney to escape all professional discipline would erode respect for legal institutions generally, a somewhat different question. Moreover, this "finding" is really a legal conclusion.

## IV

 We must consider the other grounds of discipline alleged because, under the *ABA Standards,* the severity of the sanction depends, in part, on what ethical duty is violated. *In re McGough,* 115 Wn.2d 1, 9, 793 P.2d 430 (1990). Curran argues, however, that consideration of whether his conduct involves moral turpitude violates the rule that issues not raised at trial shall not be considered on review. *See State ex rel. Graham v. San Juan Cy.,* 102 Wn.2d 311, 317, 686 P.2d 1073 (1984); RAP 2.5(a) (the appellate court may refuse to review any claimed error not raised at trial). RLD 7.4 provides that the Rules of Appellate Procedure shall serve as guidance for our review of discipline cases. Because bar counsel did not charge Curran with violating the portion of RLD 1.1(a) forbidding acts involving moral turpitude, we will not consider this here.[4]

## V

Bar counsel charged Curran with conduct prejudicial to the administration of justice. *See* RLD 1.1(i); RPC 8.4(d). The hearing examiner and Disciplinary Board found that Curran's conduct was unrelated to the administration of justice.

 Decisions in this jurisdiction show that conduct deemed prejudicial to the administration of justice has generally been conduct of an attorney in his official or advocatory role or conduct which might physically interfere with enforcing the law. *See, e.g., In re Johnson,* 114 Wn.2d 737, 738–42, 790 P.2d 1227 (1990) (conversion of trust fund money to personal use); *In re Lynch,* 114 Wn.2d 598, 600–01, 789 P.2d 752 (1990) (taking photos of undercover police to show to a friend who had a cocaine problem); *In re Krogh,* 85 Wn.2d 462, 464, 536 P.2d 578 (1975) (conspiracy in official capacity to violate civil rights by breaking into

---

[4]This makes it unnecessary to discuss Curran's argument that consideration of the moral turpitude question violates due process of law and that bar counsel's "stipulation" that Curran's conduct does not violate the moral turpitude rule below bars our consideration of it here.

the office of Daniel Ellsberg's psychiatrist and stealing documents). Professor Hazard, a leading authority on legal ethics, has stated that the rule against conduct prejudicial to the administration of justice should be construed to include only clear violations of accepted practice norms. G. Hazard, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 569 (1985). This suggestion makes special sense in the context of the Washington rules which discipline lawyers for acts showing a disrespect for the rule of law or acts involving moral turpitude. RLD 1.1(a). RLD 1.1(a) makes expansive construction of the rule against conduct prejudicial to the administration of justice unnecessary, even if the aims of lawyer discipline are viewed rather expansively.

Bar counsel argues that allowing Curran to practice despite his criminal conviction would subject the court system to such ridicule that the administration of justice would be compromised. Answering Brief of Bar Counsel, at 36. The *ABA Standards for Imposing Lawyer Sanctions*, however, demonstrate that this rule was not meant to protect the bar from damage done to the reputation of its members not connected with either physical interference with law enforcement or violation of practice norms. These standards refer to "violations of rules and procedures" and intentional misuse of public power. *See Standards* 5.21, 5.22, 5.23, 5.24. The only other *Standard* which uses the phrase "prejudicial to the administration of justice" involves false statements, fraud, and misrepresentation. *See Standard* 6.1.

Bar counsel relies upon *In re Musser,* 517 N.E.2d 395 (Ind. 1988) (per curiam) and *In re Oliver,* 493 N.E.2d 1237 (Ind. 1986). In these cases the Supreme Court of Indiana approved reprimands for prosecutors' violations of the drunk driving law which produced no injuries. The court relied heavily on the importance of obedience to the law for those charged with enforcement. *Musser,* 517 N.E.2d at 396; *Oliver,* 493 N.E.2d at 1242.

Our interpretation of RLD 1.1(a) speaks to the standards governing discipline in order to encourage obedience to the law. We decline to interpret this rule as speaking to conduct tending to embarrass the bar. Instead, we hold that this rule only extends to violations of practice norms and physical interference with the administration of justice. Because the findings of fact support the hearing examiner's conclusion that Curran's conduct did not violate this rule, we affirm this conclusion. *See In re Felice,* 112 Wn.2d 520, 772 P.2d 505 (1989).

## VI

Bar counsel also charged that Curran's conduct reflected adversely on his fitness as a lawyer. RLD 1.1(i); RPC 8.4(b). The full text of the rule reads:

It is professional misconduct for a lawyer to:

. . . .

(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

The comment to ABA Model Rule 8.4, which is exactly the same as RPC 8.4, shows that the rule only applies when criminal conduct indicates "lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category." Model Rules of Professional Conduct, at 100 (1983).

Curran points out that previous Washington cases involving this rule have involved dishonest acts clearly showing unfitness to practice. Opening Brief of Respondent, at 42. *See, e.g., In re Simmons,* 110 Wn.2d 925, 757 P.2d 519 (1988) (witness tampering); *In re Selden,* 107 Wn.2d 246, 728 P.2d 1036 (1986) (misappropriation of law firm's funds); *In re Saulnier,* 97 Wn.2d 676, 648 P.2d 433 (1982) (theft).

*In re Oliver, supra,* provides useful guidance for applying the rule. The Indiana Supreme Court focuses on the nexus between the misconduct and fitness to practice law. In applying this rule, the court is concerned with "its duty to

assure the public" that attorneys provide legal services responsibly and competently. *Oliver,* 493 N.E.2d at 1242.

The court rejected the argument that a DWI conviction reflected adversely on Oliver's fitness to practice law. It relied on evidence in the hearing which showed little effect on his practice. *Oliver,* at 1243.[5]

Bar counsel suggests that Curran's competence as an attorney is irrelevant to the question of whether his acts reflect adversely on his fitness as a lawyer. He cites this statement in *In re McGrath,* 98 Wn.2d 337, 345–46, 655 P.2d 232 (1982):

> McGrath's competence as an attorney is not relevant to the question of whether permitting him to remain a member of the profession would cast a serious reflection on the dignity of the court and on the reputation of the profession.

He also cites a similar statement in *In re Krogh, supra.* Bar Counsel's Answering Brief, at 32 (citing *Krogh,* 85 Wn.2d at 480). Both statements were made in the context of a decision about whether disbarment was appropriate, not a discussion of which rules were violated. Indeed, neither the bar nor this court maintained that the conduct of either Krogh or McGrath violated a rule against acts reflecting adversely on fitness to practice law. Krogh's conduct was prejudicial to the administration of justice and involved moral turpitude. *Krogh,* at 463–64. McGrath's assault involved moral turpitude. *McGrath,* at 340–43. Our statements in these cases are relevant to the magnitude of the sanctions, not to the scope of the rule forbidding acts reflecting adversely on fitness to practice law.

Bar counsel relies on *Kentucky Bar Ass'n v. Jones,* 759 S.W.2d 61 (Ky. 1988) and *Office of Disciplinary Counsel v. Michaels,* 38 Ohio St. 3d 248, 527 N.E.2d 299 (1988). Those cases hold that vehicular homicide adversely reflects on the

---

[5]The *Oliver* court reprimanded Oliver for driving while intoxicated under the rule governing activity prejudicial to the administration of justice. *See Oliver,* 493 N.E.2d at 1241–43. As discussed earlier, this case involves an unnecessarily expansive interpretation of that rule given the presence of more appropriate catchalls in the Washington rules.

perpetrator's fitness to practice law. But neither case discusses the relationship between the attorney's conduct and his or her fitness to practice law. The *Michaels* court simply relied on precedent showing that unintentional criminal conduct can result in professional sanctions, without any analysis on the relationship between drunk driving and legal practice. *Michaels,* 38 Ohio St. 3d at 250–51. The Kentucky Supreme Court relied on the fact that vehicular homicide brings the bench and bar into disrepute. *Kentucky Bar Ass'n,* 759 S.W.2d at 63. This says nothing about the relationship between the attorney's act and the ability to practice law. These failings make these cases unpersuasive.

We hold that conduct reflecting adversely on a lawyer's fitness to practice law can only be found when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice. The rule is not concerned with maintaining public confidence in the bar by disciplining lawyers harming the public image of the bar. Rather, it is concerned with protecting the public from incompetent practitioners.

We point out that this rule is not the same as RLD 1.1(p) which forbids conduct demonstrating unfitness to practice law. Thus, evidence of the practitioner's capability will not always be determinative of whether an act reflects adversely on an attorney's fitness. It is, however, relevant, especially when the conduct at issue occurs in a nonlegal setting. Because the factual findings support the hearing examiner's conclusion that Curran did not violate this rule, we affirm that conclusion.

## VII

We asked the parties to discuss the law of civil disabilities. Bar counsel argues that this body of law supports suspension of Mr. Curran until such time as his conviction is either reversed or he is paroled.

The term civil disabilities refers to a body of law which deprives convicted felons of various rights and privileges.

*See generally* Special Project, *The Collateral Conse-quences of Criminal Conviction,* 23 Vand. L. Rev. 929 (1970). The law of bar discipline is part of that body of law, insofar as it authorizes discipline of convicted felons. *See* Special Project, 23 Vand. L. Rev. at 1002–13.

We sought briefing on the civil disabilities question because we found analogies to other civil disabilities helpful in resolving a recent bar reinstatement case. *See In re Walgren,* 104 Wn.2d 557, 568–70, 708 P.2d 380 (1985). Walgren sought reinstatement following disbarment, but prior to his release from parole. Unlike the rules of some states, Washington's rules on attorney discipline are silent as to whether an attorney, disbarred because of a felony conviction, can apply for reinstatement. *Walgren,* at 566. Under Washington law, an attorney cannot be reinstated until "sufficient time has elapsed to enable him to actually demonstrate, by conduct, that he is, in fact, worthy of trust and confidence." *Walgren,* at 565 (quoting *In re Lonergan,* 23 Wn.2d 767, 771, 162 P.2d 289 (1945)).

In the *Walgren* case, we held:

> [A]ttorneys will not be reinstated into the bar until they have successfully completed the conditions of their parole and have been finally discharged. Reinstatement prior to the elapse of parole would not comport with the principle that a parolee is not to be accorded complete liberty and privilege prior to successful completion of parole.

*Walgren,* at 571. Bar counsel cites this passage and states:

> Just as a parolee is lacking "complete liberty and privilege," Mr. Curran is currently lacking complete liberty and privilege in that he cannot now serve as the executor or administrator of an estate nor as a guardian or trustee. . . .

Answering Brief of Bar Counsel, at 42. *See* RCW 11.36.010; RCW 11.36.021(2)(a); RCW 11.88.020(3).

But the *Walgren* court specifically declined to hold that restoration of civil rights is a condition precedent to rein-statement. *Walgren,* at 570. We chose to make successful completion of parole a condition precedent to reinstate-ment, but not satisfaction of other statutes which might restrict a former convict's rights. Because *Walgren* stands

only for the narrow proposition that parolees who have already been disbarred must complete parole before reapplying, it provides no direct guidance on resolving the question of whether Curran should be suspended at this time.

Bar counsel attaches special significance to the fact that statutes prohibit convicted felons from engaging in tasks commonly performed by lawyers; namely, acting as a guardian, trustee, executor, and administrator of a trust. Answering Brief of Bar Counsel, at 45. Since attorneys cannot get partial licenses, argues bar counsel, they cannot continue to practice given these disabilities. This argument is obviously not correct. All attorneys have limited licenses. Attorneys' licenses are limited to particular geographic areas, C. Wolfram, *Modern Legal Ethics* 865 (1986); certain courts, C. Wolfram, at 853; and do not entitle the bearer to practice patent law absent special examination, *see* 5 U.S.C. § 500(e); 35 U.S.C. §§ 31–33. Not surprisingly, bar counsel cites no authority for the crucial proposition about partial licenses to practice being unavailable.

We find the law of other civil disabilities irrelevant to the question of appropriate sanctions in bar discipline cases. We turn to the standards which govern all bar discipline cases, the *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986). *In re Lynch,* 114 Wn.2d 598, 610, 789 P.2d 752 (1990).

## VIII

Having found that Curran violated a Rule for Lawyer Discipline, we must consider whether disbarment, suspension, reprimand, or censure is appropriate. RLD 5.1. The *ABA Standards* govern all discipline cases in this jurisdiction. *Lynch,* 114 Wn.2d at 610. Because the *ABA Standards* track the ABA Model Rules, they do not provide direct guidance for violations of RLD 1.1(a), which has no counterpart in the ABA Model Rules.

Our adoption of these *standards* reflects our agreement with the purposes they are meant to serve, the creation of

consistency in imposing sanctions both within and between jurisdictions. *ABA Standards,* at 1; *see generally* Kelly, *Lawyer Sanctions: Looking Back Through the Looking–Glass,* 1 Geo. J. of Legal Ethics 469, 471 (1988) (citing this court's frustration with the inconsistencies in lawyer sanctions as evidence of the need to adopt the *ABA Standards*). We agree that inconsistent sanctions "cast doubt on the efficiency and the basic fairness of . . . disciplinary systems." *ABA Standards,* at 1. We believe, however, that inconsistencies within a jurisdiction are even more corrosive than inconsistencies between jurisdictions. We reviewed this case for that reason and the sanction we impose will reflect this commitment to consistency as well.

Curran argues that we should defer to the Disciplinary Board's view of the appropriate discipline in this case. *In re Allotta,* 109 Wn.2d 787, 795, 748 P.2d 628 (1988). This principle applies when the Disciplinary Board has determined that a violation has occurred and made a recommendation as to discipline. In this case, the Disciplinary Board did not find a violation and did not recommend discipline for that reason. Accordingly, this principle does not apply to this case.

In choosing an appropriate sanction, this court first considers the ethical duty which the lawyer violated, the lawyer's mental state, and the extent of the actual or potential injury caused by the lawyer's misconduct. *In re McGough,* 115 Wn.2d at 9–10. These factors create a presumptive sanction which aggravating or mitigating factors may alter.

Because the *ABA Standards* do not include a specific *Standard* aimed at conduct reflecting disregard for the rule of law, we must determine on our own how much weight such a violation should be given. We have explained at some length that RLD 1.1(a) precludes the conclusion that discipline is only appropriate for actions bearing directly on a lawyer's competence. We have also noted that the criminal justice system bears the primary responsibility for enforcing the criminal code. In cases involving disrespect

for the rule of law, as we have defined it, bar discipline supplements the work of the criminal courts in order to maintain respect for the integrity of legal institutions. In cases involving violations of practice norms, on the other hand, lawyer discipline may be the only deterrent available.

We have also explained that enforcement of the rule against conduct reflecting a disregard for the rule of law generally serves the purpose of maintaining public confidence in the bar. We have consistently held that this is a goal of the lawyer discipline system. But, we must concede that it is not nearly as important as protecting the public from unworthy practitioners, a function performed by most of our other rules. Indeed, vigilant protection of the public from the dishonest and the incompetent will do more to enhance public confidence in the bar than enforcement of our rules having a more tangential relationship to practice. We therefore hold that in most cases violation of the phrase of RLD 1.1(a), which we are discussing, should result only in a reprimand or censure.

We must also take into account the lawyer's mental state. *McGough,* 115 Wn.2d at 9. Curran did not intend to kill his companions, but chose to drive his car. The unintentional dimension of his conduct would normally justify a minimal sanction.

Finally, we must take into account the extent of the injury involved. *McGough,* at 9. We give particularly great weight to this factor. Administration of this rule must maintain public confidence in our legal institutions with an eye toward enhancing respect for the law generally. We must therefore administer the rule in a manner which holds individuals accountable for the results, even unintended results, of their actions. On the other hand, we may not administer this rule in a manner unfair to the lawyer in order to appease the public. *In re Krogh,* 85 Wn.2d at 501 (Utter, J., dissenting).

Mr. Curran's conduct led to the deaths of two people. In deciding how much weight to give to this we are guided by the need for consistency. Because every court

which has considered the matter under rules similar to ours in the array of sanctions available for felonies has suspended an attorney for vehicular homicide, we hold that this is the appropriate sanction for every vehicular homicide. *See In re Alkow*, 64 Cal. 2d 838; *Office of Disciplinary Counsel v. Michaels*, 38 Ohio St. 3d 248; *Kentucky Bar Association*, 759 S.W.2d 61. We have also approved of a suspension in the *Willhite* stipulation for the same conduct.

The principle of consistency alone, however, cannot determine the length of the suspension. The suspensions in the cases cited to us vary in length from 6 months, *Alkow*, 64 Cal. 2d at 914, to 2 years, *Kentucky Bar Ass'n*, 759 S.W.2d at 64.

Consistency within a jurisdiction is more important than consistency between jurisdictions. Accordingly, we are inclined to give great weight to the 12–month sanction we ordered in approving the *Willhite* stipulation. This, however, would contradict our statement that great weight would be attached to the amount of injury inflicted in order to enhance responsible conduct. Unlike Mr. Willhite, Mr. Curran was found guilty of two counts of vehicular homicide. The Kentucky Supreme Court suspended Mr. Jones for 2 years when he committed two counts of vehicular homicide. Thus, we conclude that the presumptive sanction for two counts of vehicular homicide is 2 years.

## IX

Once this court has arrived at a presumptive sanction, taking into account the ethical duty violated, the lawyer's mental state, and the actual injury, it then decides whether mitigating factors justify deviation from the presumptive sanction. *See In re McGough, supra.* The factual findings and case law fully support finding the following mitigating factors: (1) absence of prior disciplinary proceedings; (2) absence of a dishonest motive; (3) timely good faith effort to make restitution; (4) physical disability; (5) remorse; and (6) sanctions already imposed. *See In re*

*Johnson,* 114 Wn.2d at 747–48. We give special weight to the fact that Curran has already suffered an 18–month interim suspension. This suspension was as real to him as a suspension ordered after completion of disciplinary proceedings.

These six factors, especially the 18 months already spent on interim suspension, justify reducing his suspension time by 18 months to 6 months. Bar counsel originally requested a suspension lasting 6 months or until Curran's discharge.

We reject Curran's attempts to claim credit for several additional mitigating factors. We have held that cooperation with the Disciplinary Board is not a compelling mitigating factor, although failure to cooperate can be an aggravating factor. *Johnson,* at 747. Thus, Curran gets no credit for his cooperation.

Curran points out that he and his wife have had to exhaust their savings and sell their home in order to repay debts relating to the accident. We have held that personal financial problems, however severe, are not a mitigating factor in a disbarment case. *Johnson,* at 748. Similarly, Mr. Curran's financial problems are not a mitigating factor in considering the length of his suspension.

Curran suggests that his reputation for honesty and competence is a mitigating factor. His reputation for both is excellent. But *McGrath* establishes that reputation is not a mitigating circumstance to be considered when the disciplinary sanction is being imposed for an act not directly related to professional activity. *McGrath,* 98 Wn.2d at 344–45. Since a sanction for conduct reflecting a disrespect for the rule of law serves to protect the bar's reputation, not its actual functioning, the views of professional associates about his competence are not relevant to the length of the sanction under this rule.

CONCLUSION

In consideration of Mr. Curran's interim suspension and the other mitigating factors discussed, we order Mr. Curran

suspended for 6 months beginning on the date of oral argument in this court. Mr. Curran's conduct reflects a serious disregard for the rule of law and merits discipline under our rules.

CALLOW, C.J., and BRACHTENBACH, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

DOLLIVER, J., concurs in the result.